STATE, *ex rel.* CARY D. LANDIS, Attorney General, v. ULY O. THOMPSON.

163 So. 270.

En Banc.

Opinion Filed September 18, 1935.

862

*Cary D. Landis,* Attorney General, *H. E. Carter,* Assistant, *Cockrell & Cockrell, Francis P. Fleming, E. J. L'Engle, L. R. Milton, P. H. Odom, H. T. Cook, Hull, Landis & Whitehair* and *MacWilliams & Upchurch,* for Relator;

*D. H. Redfearn, R. H. Ferrell, Thomas H. Anderson, H. H. Eyles* and *E. F. P. Brigham,* for Respondent.

DAVIS, J.—The State, by its Attorney General, has filed an information in quo warranto against respondent, Uly O. Thompson, requiring him to show by what authority he continues to exercise the powers and duties of a Circuit Judge of the Eleventh Judicial Circuit of Florida notwithstanding the becoming effective of Senate Bill No. 4 (Chapter 17085, Acts of 1935).

To the pleading of the Attorney General respondent has filed an answer which sets up, in effect, the alleged right of the respondent to continue to hold the office he claims, under and by virtue of Chapter 9163, Acts of 1923, Laws of Florida, the respondent's contention being that Section 45 of Article V of the Constitution purportedly ratified at the general election in 1934, was never properly submitted to the electors and therefore not legally adopted as a part of the State Constitution, and even if it was, that said Senate Bill No. 4, passed at the 1935 session of the Legislature, was never constitutionally enacted as a valid law of the State of Florida, and that it is otherwise contrary to and violative of the paramount law set forth in the provisions of the State Constitution controlling legislation of that character.

Specifically respondent avers in his return that on the

27th day of January, 1930, he was duly appointed by the Honorable Doyle E. Carlton, who was then Governor of the State of Florida, and he duly qualified for such office as required by law, and that his appointment as said Judge was thereafter confirmed by the Senate of the State of Florida at its next regular session and he has since said time and is now exercising the franchises, functions, jurisdiction and powers of said office by virtue of said appointment and confirmation of the Senate of the State of Florida and that although the term of the commission under said appointment did expire on the 6th day of June, 1935, he is now holding over and acting in pursuance of a continuing constitutional commission and by reason thereof is exercising the functions, franchises, jurisdiction and powers as Circuit Judge of the Eleventh Judicial Circuit of Florida, because his successor has not been appointed by the Governor of the State of Florida and confirmed by the Senate of the State of Florida, as is provided by the Constitution and laws of the State of Florida; that he is now and will continue to be Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, until his successor is appointed by the Governor of the State of Florida and confirmed by the Senate, for the reason that the amendment to the Constitution of the State of Florida, set up and known as Section 45, Article V thereof, providing for the reapportionment and reduction of all Judicial Circuits and Circuit Judges in the State of Florida and for the appointment of additional Judicial Circuit Judges and the designation of the place of residence of such additional Judge or Judges, and Senate Bill No. 4, redistricting the State of Florida into Judicial Circuits and providing for the appointment of Circuit Judges and repealing existing laws in conflict with the

provisions of said Act are unconstitutional and void for the following reasons:

1. By said purported amendment an attempt was made to amend the Constitution in four separate and independent ways by repealing all or portions of Sections 8, 35, 42 and 43 of Article V of the Constitution of the State of Florida without submitting separately to the electors each of said amendments and giving the electors an opportunity to vote "yes" or "no" on each of said amendments provided by Section 1, Article XVII, of the Constitution of the State of Florida.

2. The amendment proposed by the Legislature was not copied upon the ballots used when the same was submitted to the electors of the State of Florida for approval or rejection, as provided by Section 1, Article XVII, of the Constitution of the State of Florida, as shown by the provisions of said ballot relating to said amendment as follows:

"Proposing to Amend Article V of the Constitution of Florida Relating to the Judiciary by Adding Thereto an Additional section to be Known as Section 45, Providing that there shall Be No More Than Fifteen Judicial Circuits of the State of Florida, the Same to be Designated, Numbered and Defined by Act of the Legislature; Provided, that no Such Judicial Circuit Shall Embrace Less Than Fifty Thousand Inhabitants According to the last Preceding State or Federal Census; and Provided Further, that No Existing Judicial Circuit Shall be Affected Except by Act of the Legislature Under This Amendment; Nor Shall Any Existing Circuit Judge or State Attorney be Disturbed in the Tenure of His Office Until the Expiration of His Present Commission; Making it the Duty of the Legislature at its Next Regular Session to Pass Suitable Laws to Effect this Amendment, and Providing That There Shall Be One Cir-

cuit Judge to Each Judicial Circuit, but Additional Circuit Judges May Be Provided for by Law as Now Authorized; but the Total Number of Circuit Judges in any One Circuit Shall Not Exceed One for Every Fifty Thousand Inhabitants or Major Fraction Thereof; and Providing that in Circuits Having More Than One Judge, the Legislature May Designate the Place of Residence of Any Such Additional Judge or Judges."

3. The substance of the amendment was not placed upon the ballot used.

4. The amendment as appearing upon the ballot used contained incorrect and misleading statements of the substance of the amendment.

5. A material portion of the amendment proposed by the Legislature was omitted from the amendment that appeared upon the ballots used.

6. Senate Joint Resolution No. 582, proposing said amendment to the Constitution, upon reaching the House of Representatives for consideration, was amended by three separate amendments, neither of which was concurred in by the Senate and from one of which amendments the House of Representatives never receded, so that no proposal to amend the Constitution was ever agreed upon by the requisite three-fifths vote of the members of the House and Senate so as to authorize the submission thereof to the people for ratification or rejection.

7. The purported amendment constituted a revision of and not an amendment to Article V of the Constitution.

8. Senate Bill No. 4 was passed in the Senate of the State of Florida after twelve o'clock noon May 31, 1935, contrary to Section 2, Article III, of the Constitution, had arrived.

9. It is common public knowledge of which the courts

will take judicial notice that the 1935 Legislature of the State of Florida remained in session approximately forty hours after the constitutional sixty-day limitation had expired, for the purpose of passing legislation and that during said period said Senate Bill No. 4 was passed.

10. Section 5-A of said Senate Bill No. 4 was never passed by both Houses of the Legislature and being inseparably connected with the remainder thereof said bill as a whole was thereby rendered nugatory, illegal and void.

11. Said Senate Bill No. 4 embraces more than one subject matter properly connected therewith by the inclusion therein of Section 5-A, which is in violation of Section 16, Article III, of the Constitution of the State of Florida.

12. Said Senate Bill No. 4 violates Section 21 of Article III of the Constitution in that it is not a law of general and uniform operation throughout the State.

13. Said Senate Bill No. 4 does not provide for carrying into execution the alleged constitutional amendment in the manner provided in the amendment itself.

14. By the provisions of said Senate Bill No. 4 it designates where constitutional judges may or may not reside.

15. Said Senate Bill No. 4 fails to provide for additional Circuit Judges for Judicial Circuits as authorized by Section 43 of Amended Article V of the Constitution of Florida.

16. Said Senate Bill No. 4 fails to designate the place of residence of the additional Judge or Judges provided for under the provisions of Section 45 of Amended Article V of the Constitution of the State of Florida.

17. The amendment empowered the Legislature to provide additional Circuit Judges by law as authorized by Section 43 of Amended Article V of the Constitution of the State of Florida. The statute, therefore, must be construed to refer to additional Judges only and the number so pro-

vided for is in excess of the number allowed by the provisions of said amendment.

18. By designating the residences of Circuit Judges in all of the Circuits except the Sixth and Thirteenth Judicial Circuits, which are excepted from the provisions of Section 2, said Senate Bill No. 4 is in conflict with Section 45 of Amended Article V which authorizes the Legislature to designate only the place of residence of any such additional Judge or Judges.

19. In Section 1 of Senate Bill No. 4, it is provided among other things that the Second Circuit "* * * shall have two circuit judges, but one of whom shall reside in Leon County."

While in Section 2 of said Act it is provided "* * * that in circuits composed of two or more counties having only two circuit judges under the provisions of this Act, both judges shall not be residents of the same county."

Said provisions are in hopeless conflict.

20. Said Senate Bill No. 4 does not provide additional Circuit Judges according to the provisions of Section 45 of Amended Article V.

21. Said Senate Bill No. 4 attempts to increase the number of constitutional judges in excess of the number allowed by Section 45 of Amended Article V.

22. Because under the provisions of the Act someone other than the Governor and the Legislature is necessarily compelled to designate who shall be the constitutional judge in each circuit and who shall be the additional judges in each circuit where there may be additional circuits established by law as provided under the amendment itself, which is in violation of the constitutional privileges granted the Governor and the Legislature.

23. Because under the provisions of said Senate Bill

No. 4 no one is authorized to designate who shall be constitutional judge in each circuit and who shall be the additional judge or judges in such circuits where there are additional judges authorized by law and there is no way to determine who the additional judges are.

24. Because said Senate Bill No. 4 fails to designate the place of residence of any additional judge or judges.

25. By the provisions in Section 2 of said Senate Bill No. 4 providing: "* * * that in the seventh circuit, one judge shall reside in Volusia County and one judge shall reside in one of the other counties of said circuit," said Act attempts to prohibit the constitutional judge from residing in the county wherein the additional circuit judge or judges may reside, which is in violation of Section 8, Article V, of the Constitution of Florida.

26. By that provision in Section 2 of said Senate Bill No. 4 providing "* * * that in the twelfth judicial circuit, one judge shall be appointed from and be an actual *bona fide* resident of the County and shall reside in Lee County during the continuance of his appointment," said Act attempts to limit the constitutional authority of the Governor in his selection or appointment of a constitutional judge in and for the Twelfth Circuit and attempts to require the Governor to select in his appointment of Circuit Judges in the Twelfth Circuit one Judge who shall be "from and be an actual *bona fide* resident of Lee County," which is in violation of Section 8, Article V, and Section 27, Article III, of the Constitution of the State of Florida.

27. By Section 2 of said Senate Bill No. 4 providing that "* * * in the ninth circuit one judge shall reside in Seminole or Brevard, one judge shall reside in Orange or Osceola and one judge shall reside in Indian River, Okeechobee, St. Lucie or Martin County," the constitutional

judge is required to live in a certain county or section of said circuit and the Governor in appointing said constitutional judge is limited in his selection to one who does or who will consent to reside in a particular county or section of said circuit, which is in violation of the Constitution of the State of Florida, as hereinbefore set forth.

28. By the provisions of Section 2 of said Senate Bill No. 4 providing: "* * * that in the eleventh circuit *one judge shall be appointed from and be an actual bona fide resident of Monroe County* and shall reside in Monroe County during the continuance of his office," an attempt is made to require the Governor in appointing the Judges of the Eleventh Judicial Circuit to select one who shall be "from and be an actual *bona fide* resident of Monroe County," which is in violation of the Constitution as hereinbefore set forth.

29. By the provisions of Section 2 of said Senate Bill No. 4 it is provided that: "* * * the thirteenth judicial circuit shall not be affected by this Act, but shall remain as provided under existing law," and by reason of which said Thirteenth Judicial Circuit is authorized to have only the constitutional judge provided by Section 5 of Amended Article V of the Constitution which is in conflict with the provisions of said amendment and Section 21 of Article III of the Constitution which requires that all laws shall be general and of uniform operation throughout the State and is contrary to the provisions of said Section 45 which required the Legislature to pass suitable laws reapportioning or reducing all Judicial Circuits and Circuit Judges.

So the proposition required to be decided on the issue thus made by respondent and accepted by the State through its Attorney General is whether or not Chapter 17085, Acts 1935, Laws of Florida, ever became a valid statute of this State insofar as it has the legal effect of terminating the

tenure of office of respondent as one of the Judges of the Eleventh Judicial Circuit of Florida. It is uncontroverted on the argument that if said Chapter 17085 is a valid Act of the Legislature that the return of the respondent is insufficient in law and that the demurrer of the State thereto must be sustained.

The first problem to be considered is the validity *vel non* of the adoption of Section 45, Article V, as a part of the Constitution, the publication of which by the Secretary of State for submission to the vote of the electors at the 1934 election was duly challenged in judicial proceedings and thereupon upheld by a majority of this Court in the case of Collier v. Gray, Secretary of State, 116 Fla. 845, 157 Sou. Rep. 40. The proposal thus submitted to and ratified* by the electors was as follows:

"Proposing an Amendment to Article V of the Constitution of Florida Relating to the Judiciary by Adding thereto an Additional Section to be Known as Section 45 Providing for the Reduction of the Number of Judicial Circuits of This State and Requiring the Reapportionment of Such Circuits and the Judges Thereof.

"BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"That the following amendment to Article V of the Constitution of this State relating to the Judiciary by adding thereto additional Section 45 as hereinafter set forth, be and the same is hereby agreed to and shall be submitted to the qualified voters of the State of Florida for ratification or rejection at the next ensuing general election, that is to say, that an additional Section to be designated as Section 45

*At the 1934 election the vote in favor of ratification of this amendment as part of the Constitution was 101,086 for to 27,813 against.

of Article V of the Constitution of Florida be adopted to read as follows, to-wit:

" 'Section 45. `

" '(a) There shall be no more than fifteen judicial circuits of the State of Florida to be appropriately designated, numbered and defined by a suitable law enacted by the Legislature for that purpose in accordance with the amendment; Provided that no judicial circuit as defined by law hereunder shall embrace less than fifty thousand inhabitants according to the last preceding State or Federal census; and provided further, that no Judicial Circuit existing at the time of the ratification of this amendment shall be affected, altered, or abolished, except in the manner provided in this amendment for carrying the same into execution, nor shall any existing Circuit Judge or State Attorney be disturbed in the tenure of his office until the expiration of any commission held by him on the date this amendment is ratified.

" '(b) It shall be the duty of the Legislature at its next regular session after the amendment shall have been ratified to pass suitable laws to carry this amendment into effect, and to make effective the reapportionment and reduction of judicial circuits and Circuit Judges hereby contemplated.

" '(c) There shall be one Circuit Judge to each Judicial Circuit but additional Circuit Judges for Judicial Circuit may be provided for by law as authorized by Secton 43 of Amended Article V of this Constitution, but the total number of Circuit Judges apportioned to any one judicial circuit shall not exceed one Circuit Judge for every fifty thousand inhabitants, or major fraction thereof, after this amendment shall have been put into effect.

" '(d) In Circuits having more than one Judge the Legislature may designate the place and residence of any such additional Judge or Judges.

" '(e) The reapportionment of Circuits and Judges thereof hereby provided for shall become effective sixty days after the Act providing for same shall have become a law.' "

In the case of West v. State, 50 Fla. 154, 39 Sou. Rep 412, this Court had before it for consideration the question whether or not Amended Section 17 of Article III of the Constitution had been constitutionally voted on and ratified by the electors in 1896, so as to properly become a part of the State Constitution, despite the fact that the Legislature of 1895 in attempting to submit such amendment as a proposal to change the fundamental law, had not complied with Section 1 of Article XVII of the Constitution in the formalities required to be pursued by the Legislature in the submission of constitutional amendments for ratification or rejection by the people. The precise objection there urged was that the proposed amendment to Section 17 of Article III of the Constitution was inoperative, unconstitutional and void for the reason that the Legislature of 1895 in adopting the joint resolution proposing such amendment to the Constitution did not enter the proposed amendment upon the Journals of the respective Houses with the yeas and nays, as mandatorily required by Section 1 of Article XVII of the State Constitution of 1885.

In upholding the *ratified* amendment as against the attack so made against it, this Court in the West case, *supra,* definitely and conclusively aligned itself with the doctrine of a majority of the American Courts that in ruling upon the validity of constitutional changes *after* the popular voice has been expressed in favorably voting upon such changes proposed in the form of constitutional amendments agreed to by the Legislature, the popular voice is the paramount act, and that mere formal or procedural irregularities in the framing, manner, or form of such submission or balloting,

will not be held fatal to the validity of such amendment after it has been actually agreed to by three-fifths vote of all the members elected to each House, and such amendment thereafter duly published, submitted to and affirmatively approved by a majority vote of the electors cast thereon.

Upon the authority of West v. State, *supra,* the doctrine which has been followed and approved in the case of Collier v. Gray, 116 Fla. 845 (text 858), 157 Sou. Rep. 40, a majority of the Court are of the opinion that even if some required form of procedure, in either of the particulars complained of by the respondent in this case, was in fact omitted or affirmatively disregarded by the Legislature of 1933 in submitting additional Section 45 of Article V of the State Constitution as a proposal to amend the fundamental law, that after the same has been duly advertised and the notices thereof required by Section 1 of Article XVII, constitutionally published, and the people by a majority of their votes cast thereon at the 1934 General Election have approved the constitutional change made by Section 45 of Article V as a valid part of the Constitution, that the validity of said added Section 45 of Article V as a part of the organic law of this State is no longer open to question, and that this Court is bound by the popular voice as the paramount act of the people of the State, notwithstanding the validity of procedural or formal objections that might have been successfully urged, but were not, in the judicial proceedings heretofore concerning the identical Amendment when it was before this Court in the case of Collier v. Gray, *supra,* prior to its publication and ratification by the electors.

The act of amending the Constitution is serious business. No unimportant part of the task involved is the Legislature's *framing* of the Amendment in appropriate language. Thus the *framing* by the Legislature of proposed Amend-

ments to the Constitution comprehends that they shall be so dealt with procedurally and contrived in form, as to be submitted for the electors to vote on each Amendment separately. It is therefore of vital consequence that the proposed form (frame) of each separate Amendment shall be recorded on the Journals of each House, there to stand as an imperishable memorial of same not likely to be lost to posterity should the enrolled resolution evidencing same be lost, or perchance be removed, from the public archives in the office of the Secretary of State. It is with equal force required by the Constitution that the formal act of agreeing to and submitting to the people each proposed amendment shall be in every respect done in conformity to the requirements of Section 1 of Article XVII of the Constitution because such requrements are mandatory and should be complied with before a resolution of the Legislature is offered to be published for submission to the voters as a proposed amendment to the people's fundamental law.

But under the rule of law prevailing in this State, only *before* constitutional amendments have been actually advertised, submitted and voted on, will the courts undertake by judicial processes to determine controversies involving the judicial exaction of compliance with the constitutional requirements specified in Section 1 of Article XVII on the part of the Legislature. And the courts will do so at that time only because of the right of citizens of the State to have the constitutional formalities observed that are designed to inure to the benefit of all the citizens and taxpayers of the State as a matter of vested legal right. This is so because the citizens are entitled to have their Constitution remain sacrosanct, unaltered and untampered with, until such time as the Legislature shall by appropriate proceedings proposing a change in the same proceed to bring

about such change in strict conformity to the essential requirements of their organic compact which in terms permits constitutional changes to be accomplished in the State's fundamental law only under certain definite and limited conditions that have been specified therefor in the Constitution itself. Crawford v. Gilchrist, 64 Fla. 41, 59 Sou. Rep. 963, Ann. Cas. 1914-B 916; Gray v. Childs, 115 Fla. 816, 156 Sou. Rep. 274.

We therefore hold that Section 45 of Article V having been heretofore judicially approved by this Court as having been validly submitted to the electors, and thereafter duly advertised, voted upon, and ratified by the votes of a majority of the electors cast thereon, has now validly become a part of the Constitution of Florida and that respondent's several objections urged thereto, as embraced in grounds 1, 2, 3, 4, 5, 6 and 7 of his return as hereinbefore set forth, must accordingly be severally overruled.

The fact that many of the constitutional objections now being urged against the validity of House Joint Resolution No. 582 (1933 Session) were not put in issue, nor actually litigated in the case of Collier v. Gray, *supra,* wherein it was sought to restrain the Secretary of State from publishing said resolution as a proposed amendment to the Constitution in the form of an added Section 45 of Article V, is immaterial in the light of the accepted rule that the popular voice is the paramount act where the proposed amendment was actually agreed to by the required vote of each House of the Legislature, and thereafter constitutionally published for the required time, voted on and thereafter ratified by a majority of the electors voting thereon.

Furthermore, where the validity of the submission of a proposed joint resolution of three-fifths of each House of

the Legislature as a proposed constitutional amendment is duly litigated by a citizen prior to its being published and voted on, the effect of a judicial decision holding the submission to be valid, and the pending publication of the amendment to be in conformity to the organic law, and refusing to enjoin it, becomes binding on the State which is represented in such litigation by its Secretary of State. The State being bound by such judicial decision, it consequently becomes binding on all who claim under the State, as does the respondent in this case, and this is so even though respondent was not a direct party to such litigation, nor did he actually participate in the same. Respondent, in common with plaintiff in that suit, was privileged to intervene in such litigation. Such litigation, in its essence, contemplated a judicial decree declaratory of the validity *vel non* of what was being proposed as an amendment to the Constitution. As such it was required to be considered by the Court with a view to settling in advance not only all objections that were therein being urged, but all valid objections that might have been urged, to the proposal sought to be withheld from publication, insofar as same might relate to the framing of the purported amendment or to the enforcement of any other procedural formality going to the validity of its publication as a proposal entitled to be voted on at the next ensuing general election in accordance with Article XVII of the Constitution.

Hence the criticism that the proposed constitutional amendment to Section 45 of Article V was not copied upon the ballots used at the general election of 1934 at the time when the contemplated amendment was submitted to the electors of Florida for ratification or rejection, although not raised nor put in issue, nor capable of being litigated, in the

particular case of Collier v. Gray, *supra,** is none the less now advanced too late to be considered. This follows from the fact that the proposition in controversy has already been actually submitted, published and voted on in the form submitted, and, having been declared to have been carried by an approving vote of a majority of the electors, is now the paramount act of the electors which the courts must respect as having validly become a part of the State Constitution.

Section 318 C. G. L., 262 R. G. S., requires nothing more with reference to the submission of constitutional amendments than that the substance of each such amendment to be voted on shall be "indicated on the ballot." The Constitution itself merely requires that each proposed amendment "shall be submitted" to the electors of the State for approval or rejection. Section 1, Article XVII, Constitution.

In this case the amendment in controversy was unquestionably provided by the ballot forms adopted for that purpose to be "indicated on the ballot" in precisely the manner applicable election statutes require. Complaints as to the proposed form of the ballots prepared for the "submission" were available to be asserted by interested parties prior to

---

*The writer of this opinion, together with Mr. Justice BROWN, dissented from the opinion of the majority of this Court in its holding in the Collier v. Gray case, 116 Fla. 845, *supra,* and therein expressed his judicial opinion that the attacked publication was invalid. To the specific views expressed in the writer's dissenting opinion filed in that case (116 Fla., text 867) the writer still adheres insofar as his personal convictions are concerned, but yields, nevertheless, to the judgment of the majority of the Court which has now become the prevailing law of this controversy binding alike on the minority as well as the majority of the Justices of this Court participating in the earlier decision.

the election. At that time, in appropriate legal proceedings brought and maintained with the object in view of compelling the submission of the proposed amendment in legal form, and all statutory or constitutional requirements as to the form of balloting could have been duly asserted and thereupon judicially enforced in advance of the voting.

So assuming (but not deciding) that the necessary intendment, or implication, of Section 1 of Article XVII of the Constitution is that all proposed constitutional amendments shall be something more than "indicated" on the ballots as the statute ordains, and that they shall, in accordance with an implied intendment of the Constitution, be reproduced in full on the election ballots as a means of "submission" for the approval or rejection of the electors, all objections as to the form of ballots employed have now become obviated by the popular voice as the paramount act, and are consequently no longer available to be judicially urged by those who failed to seek correction of such alleged errors in the form of ballots prior to the casting by the people of the alleged irregular tickets furnished to them for voting purposes by the State. Compare: State, *ex rel.* Attorney General, v. Hill, 116 Fla. 835, 156 Sou. Rep. 891.

We pass now to a consideration of the constitutionality of Chapter 17085, Acts 1935, which has been heretofore referred to as Senate Bill No. 4.

It is urged by respondent that said Chapter 17085, *supra,* was neither framed nor enacted in conformity with Section 45 of Article V of the Amended Constitution and that therefore it is utterly frustrate, void and of no effect as a valid law of the State. On the other hand, it is argued by the Attorney General that said Chapter 17085, *supra,* was in substance at least, duly framed and enacted by the Legislature in accordance with the 1934 constitutional amend-

ment, and that even if it was not, that it is nevertheless a valid legislative Act under the general constitutional powers of the Legislature to pass needful laws, since the alteration of judicial circuits is a matter within the Legislature's ordinary powers to legislate, as distinguished from any mandate to do so as set forth in added Section 45 of Article V.

Our conclusion is that the last stated proposition is not sound as a matter of constitutional law, and that unless Chapter 17085, Acts of 1935, can be justified and sustained as a "suitable" law duly enacted in substantial conformity to the provisions of Section 45 of Article V of the Constitution, that there is no general residuary legislative power under which this Court can sustain it otherwise.

The Legislature has no inherent constitutional power to either create or abolish judicial circuits. Circuit Courts are an indispensable part of the judicial department of the State which is the direct creation of the people in and by the Constitution. An independent judiciary must ever be a cardinal principle of constitutional government. In every State in the Union, independence of the judiciary has been assured by making judges of courts of general jurisdiction secure from legislative or executive interference, excepting in the modes specifically described in the several constitutions. The independence of the judges was deemed requisite to guard the Constitution and rights of individuals from the effects of the acts of designing men, as well as to render innocuous pernicious influences sometimes attempted to be brought to bear by the people themselves which, though transient or temporary in character, would have an inevitable tendency in the meantime to occasion dangerous innovations in the government, or to work severe oppression upon the minority of a community entitled to judicial pro-

tection of their rights.   Commonwealth, *ex rel.* Hepburn, v. Mann, 5 W. & S. (Pa.) 403.

It follows therefore that it must be deemed that the people of this State in creating a judicial department wholly disassociated from the others, intended that independence of such judicial department, including its several and collective component tribunals as established or permitted to be established under the Constitution, should be secure from legislative interference in all cases where such interference has not been expressly provided for and granted to the legislative department.   Thus, with respect to its right to legislate concerning Circuit Courts and Circuit Judges of general jurisdiction, the Legislature acts solely as an agency of the people and under delegated authority to do so which must be found in the Constitution for its every action, and not under its general power to legislate which is deemed to comprehend everything not expressly or impliedly forbidden to it.

The reason for the foregoing rule, which prevails without exception in every State where occasion has arisen for deciding a controversy involving it, is best stated by the Supreme Court of Pennsylvania in the leading case of Commonwealth v. Gamble, 62 Pa. St. 343, 1 Am. Rep. 422.   In that case the Court was called on to decide the constitutionality of an Act of the Legislature abolishing the twenty-ninth judicial district and constituting it a part of the fourth judicial district.   No special constitutional delegation of power to pass such an Act was claimed, but it was contended that since the Legislature had general legislative power to pass all laws not expressly forbidden, the Act was valid as an Act of general legislation, notwithstanding the admitted absence of a specific delegation of power to the Legislature to enact it.

The Pennsylvania Court, rejecting the contention that the Legislature's general right to legislate comprehended any inherent legislative power to disestablish a Court of general jurisdiction already validly created under the Constitution, except where the Constitution expressly authorized same to be done, said:

"Could the principle of the independence of the judiciary, and, at the same time, its integrity as a co-ordinate branch of the government, have been more effectually assailed than by the passage of the Act repealing the twenty-ninth judicial district, and its transfer bodily to another district and to other judges? Even if the commission might, for compensation, endure after all power and duty under it had ceased—a result I do not admit—the Act was not less destructive of the principle of independence with which it was the purpose of the framers of the Constitution to invest the judges. What could be more destructive to all independence of action of a judge than the momentary liability, during the recurring sessions of the Legislature, to be dismissed from the exercise of the functions of his office by the repeal or abolition of his judicial district? If, all the while, he must be conscious that he exercises the powers and authority conferred by his commission only by the forbearance of the Legislature, although it might be possible that independence of action might still exist, it would be an exception; as a rule, it would be a myth. Such a state of things as would follow a rule, the result of affirming the constitutionality of the Act in question, would be utterly subversive of the independence of the judiciary, and destructive of it as a co-ordinate branch of government. The case of the twenty-ninth district this year might become that of any, or half, the other twenty-eight districts next year, for reasons quite as legitimate as those operating to procure its repeal. Estab-

lish this power in the Legislature, and it will be as easy, as it will be common, for powerful corporations and influential citizens to move the Legislature to repeal districts, and supersede judges who may not be agreeable to their wishes and interests, and transfer their business to other jurisdictions supposed to be more favorably inclined. This would be destructive of all that is valuable in the judicial office, and preservative alone of those evil qualities which flow from a subverted and subservient judiciary. I think in this State there has never been known a more palpable and direct blow at one co-ordinate branch of the government by the others, or one so destructive of the uses for which it was established, as is contained in this Act, though undesigned, we must believe. If there were no special reasons for holding it unconstitutional, these general views would require it to be so held. * * *

"I, of course, do not doubt but that the aggregate amount of the duties of a judge in any given district may be materially diminished by a division of his district, or by the election of an assistant. But that grows out of a power to reorganize or regulate the courts—a power not withheld by the Constitution, leaving the authority and jurisdiction pertaining to the office intact; and is quite a different thing from taking them away *in toto*. Their extent may, it is admitted, be changed, increased or diminished by a reorganization of the courts. This is an express provision of the Constitution, and a condition to which the office is necessarily subject. With these exceptions, no other legislative interference is legal or constitutional. The grant and tenure of the office of judge are fixed by the Constitution, and are necessarily an implied prohibition of all interferences with it, in these particulars, by any other autthority."

It seems clear, therefore that absent Section 45 of Article

V of the Constitution, the Legislature was utterly devoid of power to disestablish a Judicial Circuit, once having created it under a specific grant of the constitutional power so to do, since the power to reorganize or disestablish Judicial Circuits of the State had never been directly given by the Constitution to the Legislature prior to adoption of added Section 45 of Article V as a part of the Constitution.*

So, as we have pointed out, added Section 45 of Article V must be interpreted as an amendment to the Constitution adopted for the purpose of vesting in the Legislature an authority which it did not possess prior to the amendment. And, this being so, it follows as a matter of settled constitutional construction, the amendment must not be viewed nor considered in any other light than the purpose designed to be made manifest by it. Such purpose, as the terms of the amendment itself in Section 2 thereof demonstrates, was to make effective a power in the Legislature to provide for a reapportionment and reduction in Judicial Circuits and Circuit Judges by a statute to that end which the Legislature was placed under a constitutional mandate to pass at its 1935 regular session. It was intended to work no changes in the Circuit Courts system otherwise, except such as might be *necessarily* implied for the accomplishment of the principal end desired. That it was not the intention of the

---

*Indeed, the most likely reason for the submission of such constitutional amendment at the 1933 session of the Legislature was the considered judgment of the lawmakers themselves that without an amendment to the Constitution expressly authorizing a reorganization of the State's Judicial Circuits, no such power could have been constitutionally exercised by it to that end. Hence the sole power of the Legislature to alter, abolish, disestablish or reorganize the several Judicial Circuits of this State is now set forth in Section 45 of Article V of the Constitution which became effective in November, 1934.

framers of the reapportionment amendment to repeal or
amend, either expressly or by inference, any other existing
section of Article V of the Constitution, is clearly indicated
not only by the context of the amendment itself, but by the
fact that it was expressly framed as a new section to Article
V to become a part thereof as added Section 45, instead of
superseding any one or more of the pre-existing Sections 1
to 44 of the Judiciary Article.

A statement of the foregoing conclusions as to the proper
construction required to be placed on Section 45 of Article
V of the Constitution, considered as an added section to
those sections of the same article which preceded it, leads
to the holding that neither Sections 8, 35, 42 or 43 of Ar-
ticle V aforesaid, have been in anywise impliedly super-
seded, amended or modified by the adoption of added Sec-
tion 45, but that these and all others of the pre-existing
sections of the Judiciary Article still retain their full force,
effect and vigor, except insofar as such preceding sections
of the Judiciary Article appear to be in direct and irrecon-
cilable conflict with the express terms of said added Sec-
tion 45.

One of the most emphasized objections to the validity of
Senate Bill No. 4 (Chapter 17085, *supra*) is that it was un-
constitutionally attempted to be passed after twelve o'clock
noon on Friday, May 31, 1935. In other words, it is con-
tended that the legislative bill in controversy never passed
the Legislature at all until its allotted term of existence had
expired according to the limitations of Section 2 of Article
III of the Constitution which section provides that "regular
sessions of the Legislature may extend to sixty days" from
the first Tuesday after the first Monday in April of the
years of convening regular sessions of the Legislature. In
this connection it is pointed out that by concurrent reso-

lution agreed to by both House and Senate, and recorded in the Journals, the Legislature formally resolved to terminate its regular session at noon on Friday, May 31, 1935, from which circumstance it is argued that whatever the Legislature may have attempted to do in the way of passing legislation after the fixed time of adjournment at noon on May 31, 1935, was beyond its jurisdiction as a Legislature and consequently void.

But assuming that the Legislature did by a formal resolve agree on *sine die* adjournment at noon on the sixtieth day of its regular session, *non constat* the Legislature by a subsequent unrecorded resolution, or by common consent of its members, later determined to remain in session during the entire legislative day of May 31, 1935, which action on its part it undoubtedly had the constitutional right to take. Failure of a legislative body to adjourn promtly at the hour fixed in a mere legislative resolution of adjournment which fixes an agreed hour of adjournment short of the constitutional limitation of a full sixty days' session, is at most a breach of parliamentary law, and with mere violations of parliamentary rules in legislative proceedings, the courts have nothing to do, since under Section 6 of Article III of the Constitution the Legislature determines upon and enforces the rules of its own proceedings that are of a purely parliamentary character. In this case no allegation is made that Senate Bill No. 4 was not in fact passed and its enactment fully completed before the legislative day of May 31, 1935, had run its course and before the Legislature had thereby become *functus officio* under the limitation of Section 2 of Article III of the Constitution. We therefore grant the State's motion to strike that part of the respondent's return which avers the alleged unconstitutional enact-

ment of Chapter 17085, *supra,* after the Legislature had constitutionally come to an end.

By grounds 10 to 29, inclusive, of the respondent's return, still other objections to the validity of Chapter 17085, have been set up. The principal of these is that Senate Bill No. 4 was such a gross departure from the contemplated purpose of reapportioning and reducing the number of Judicial Circuits and Circuit Judges in the State of Florida in the interest of economy, that it should be declared wholly ineffective as a "suitable law" to carry Section 45 of Article V of the Constitution into effect.

Under the terms of the last mentioned section of the Constitution, the only requirements on the Legislature of 1935 in passing a "suitable law" to carry into effect the contemplated reapportionment and reduction in the number of Judicial Circuits and Circuit Judges as commanded by that section, were that (1) the number of Judicial Circuits should be reduced to "no more than fifteen Judicial Circuits of the State of Florida to be appropriately designated, numbered and defined by a suitable law enacted by the Legislature (of 1935) for that purpose" and (2) that in so doing the number of Circuit Judges should be so apportioned or reduced in the State that there should be no more than one regular Circuit Judge to each Circuit of the contemplated new number of fifteen Judicial Circuits, and that additional Judges should be so assigned in the Circuits that no more than one Circuit Judge should be allotted to each fifty thousand people or major fraction thereof. An examination of Chapter 17085, Acts of 1935, will disclose that in each of these particulars, the two requirements aforesaid were complied with, and therefore it cannot be judicially declared beyond a reasonable doubt that said legislative Act of the 1935 session of the Legislature is not a "suitable law" for

the purpose of carrying into effect added Section 45 of Article V of the Constitution.

Neither can it be said that the failure of the Act to designate, or to provide for the Governor in making his appointments to designate, which Judges shall be considered the regular or so-called "constitutional" Judges of the Circuits, and which Judges shall be regarded and held to "additional" Judges under Section 43 of Article V construed in connection with Section 45 of the same Article, invalidates the 1935 Act as a non-compliance with the constitutional requirement that each Circuit shall have but one *regular* Circuit Judge, although it may also have such additional Circuit Judges as the Legislature may provide for by law, so that the total number of Judges in the Circuit shall not exceed one to each fifty thousand people or major fraction thereof.*

Under Section 45 of Article V as we have heretofore construed it in connection with Chapter 17085, Acts of 1935 (Advisory Opoinion to the Governor, 120 Fla. 142, 162 Sou. Rep. 346; State, *ex rel.* Landis, v. Bird, 120 Fla. 780, 163 Sou. Rep. 248, the Governor was authorized, and indeed required, to make the appointment of all authorized Circuit Judges for a new term of office beginning July 30, 1935, and continuing for six years thereafter upon confirmation by the Senate of the Governor's appointees. The effect of the 1935 Act is therefore to make the term of office of each and every Circuit Judge in the State, whether

---

*The importance of the distinction between the two is that regular Circuit Judges are not subject to being legislated out of office either during their terms or at the end of them, while those Judges who constitute mere additional Circuit Judges are (under Section 43 of ArticleV) subject to having their offices abolished to take effect at the end of any regular term of office of any such additional Circuit Judges.

regular Judge or additional Judge, begin and end on the same date. Consequently there is no such thing as one Circuit Judge in a Circuit being the holder of a *commission* earlier in date than another, in the sense of the reference to such a situation found in Section 43 of Article V of the Constitution, nor insofar as Chapter 17085, *supra,* and Section 45 of the same Article of the Constitution are concerned.

Therefore, since there is no statute directing which of the newly appointed Circuit Judges shall be deemed appointed as regular, or senior Circuit Judges, and which of them shall be deemed appointed as additional, or junior Circuit Judges, the common law rule of judicial seniority applies, and that Circuit Judge is to be deemed the senior, or regular Circuit Judge of the Circuit, whose tenure in office as Circuit Judge is the longer as compared with other Circuit Judges serving in the same Judicial Circuit with him as may be provided for by law. The application of the common law rule of judicial seniority being implied to be required where no statutory rule has been declared, it follows that the omission from Chapter 17085, Acts of 1935, of any provision for determining which of the judges therein provided for shall be regular judges and which of them shall be additional judges under Section 43 of the Judiciary Article construed in connection with Section 45 of the same Article, is not fatal to the validity of the Act as a "suitable law" and that respondent's objections on that score must be likewise overruled as have been the others.

Another objection argued is that under paragraph (d) of Section 45 of Article V of the Constitution, the Legislature has unconstitutionally provided for a limitation on the Governor's power of appointing Circuit Judges by undertaking to do more than "designate" the place of residence

of additional Judges in Circuits having more than one Circuit Judge under the law. This criticism is well taken if we construe the provisions of the 1935 statute as *requiring* the Governor *to appoint* Circuit Judges from designated counties or groups of counties in a Circuit, as no such power is granted to the Legislature by the constitutional amendment and none exists otherwise. The language of the Constitution is no more than that the Legislature may "designate" the place of residence of an additional Circuit Judge after he is appointed, not that the Legislature may limit the eligibility of those to be appointed by requiring the Governor to select appointees who are residents *at the time of selection,* of any particular counties. However, there is nothing to show that the Governor regarded the invalid provisions of Chapter 17085, *supra,* as prescribing absolute qualifications of appointees to be binding upon him in making the appointments that he made and submitted to the 1935 Senate (although he may have followed the same as in the nature of a legislative recommendation for him to do so) hence the incorporation into the Act of residential qualifications of Circuit Judges that are broader than authorized by the Constitution will not operate to invalidate anything more than such particular provisions, which can be rejected as surplusage.

The next objection urged is that Senate Bill No. 4 never passed both Houses of the Legislature because of a showing on the legislative Journals that what now appears in the completed law as Section 5-A of the Bill, was rejected as an amendment to the measure at the time it was pending before the House of Representatives. This amendment had relation to the preservation of a Court of Crimes in Dade County that had been previously established therein according to the provisions of Section 8266 C. G. L. (Chapter

11975, Acts of 1927) which Act set up such courts in counties having two or more resident Circuit Judges, a population of more than one hundred thousand, and which alone constituted a Judicial Circuit of the State. The answer to this objection is that Section 5-A is merely declaratory of the purpose of the Legislature in passing Senate Bill No. 4, not to thereby change the existing operation of a separate statute by *indirectly* abolishing an established and then functioning Court of Crimes in Dade County. Such construction of unamended Senate Bill No. 4 would no doubt have been indulged in the absence of the amendment, so the amendment, whether validly or invalidly included, may be rejected as purely surplusage. See: Williams v. Newberger, 100 Fla. 1570, 131 Sou. Rep. 864; Kennedy v. Watson, 100 Fla. 1576, 131 Sou. Rep. 866.

The final objection is that the title to Senate Bill No. 4 is violative of Section 16 of Article III of the Constitution, in that the title and body embrace at least two separate and distinct subject matters.

Our conclusion on this score is that by Section 45 of Article V of the Constitution, the Legislature was specifically commanded to pass a suitable law or laws to carry the amendment into effect. This requirement constituted the subject of the enabling Act, one as broad as the mandates of the constitutional amendment might make necessary in order to effectually and conveniently accomplish a reapportionment and reduction in the number of Judicial Circuits and Circuit Judges.

Where duplicity of subject matter is contended for as violative of Section 16 of Article III of the Constitution relating to and requiring but one subject to be embraced in a single legislative bill, the test of duplicity of subject is whether or not the provisions of the bill are designed to

accomplish separate and disassociated objects of legislative effort. An examination of both the title and provisions of Chapter 17085, Acts 1935, fails to confirm the criticism that either the subject of the Act is duplicitous or double, or that the title is bad or misleading. The Act comprehends but a single subject which we find to have been embraced therein, namely: Reapportionment and reduction of Judicial Circuits and Circuit Judges and matters properly connected therewith.

Having now concluded a consideration of all the substantial objections against the validity of Chapter 17085, Acts of 1935 (Senate Bill No. 4) contrary to which the respondent in this case asserts title to, and the right to exercise the functions of, the office of Judge of the Eleventh Judicial Circuit of Florida under an Act of the Legislature that was repealed by said Chapter 17085, *supra*, and having found that said 1935 Act of the Legislature was validly enacted, and that it is now a constitutional law of this State insofar as it divests respondent's title to the office in which he claims to hold over under the provisions of Section 14 of Article XVI of the Constitution, it follows that the return of the respondent must be held insufficient on the State's demurrer thereto, and that such demurrer being sustained, that a judgment of ouster thereon must be entered against the respondent, unless respondent shall, within fifteen days, be able to so amend his return to the State's writ of quo warranto, as to make out a defense thereto not inconsistent with the holding of this opinion.

Demurrer to respondent's return sustained with leave to amend respondent's return in particulars not inconsistent with the holdings of this opinion, same to be filed within fifteen days from this date, in default of which amendment

judgment of ouster shall be entered against respondent on demurrer sustained.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.