Barry Richard Gables
QUESTIONS:
1. Does the language appearing on the ballot by which the voters adopted s. 14, Art. X, State Const., have any bearing on the construction of the constitutional provision?
2. If so, what is the meaning of the phrase `fully funded' in the ballot provision?
3. What is the meaning of the phrase `sound actuarial basis' in the constitutional provision?
SUMMARY:
Section 14, Art. X, State Const., prohibits all governmental unit retirement and pension systems supported by public funds from granting increases in benefits unless those increases are funded on a `sound actuarial basis.' The summary of this amendment which appeared on the amendment election ballot was worded to provide that such increases be `fully funded.' The courts may use an amendment election ballot provision as a guide in construing the constitutional amendment, where the amendment's purpose is unclear, but there is no assurance that the courts will give the ballot provision great weight. In the instant case, considering the context in which the terms are used, the ballot language `fully funded' is not substantially different in meaning from the constitutional language `sound actuarial basis.'
In November 1976, the voters of Florida approved an amendment to Art. X of the Florida Constitution, adding a new s. 14. The new section provides:
 State retirement systems benefit changes. — A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis. (Emphasis supplied.)
The voters approved this provision in the election of November 1976. The proposed amendment was reflected on the ballot as follows:
 Proposing to add Section 14 to Article X of the State Constitution to provide that increases in the benefits payable under any governmental supported retirement system after January 1, 1977, be fully funded by the governmental unit. (Emphasis supplied.)
Your first question concerns whether the ballot provision may be used in construing the constitutional provision. I cannot answer this question with absolute assurance, because the question is primarily one for the judiciary to resolve on a case-by-case basis. As a general rule of constitutional construction, however, the courts will consider materials extrinsic to the Constitution where necessary to determine the intent of the framers. These extrinsic materials may include the particular provision's historical background and contemporaneous statements of purpose.See In re Advisory Opinion to the Governor, 276 So.2d 25 (Fla. 1973); State v. Florida State Improvement Commission, 60 So.2d 747
(Fla. 1952); and Lummus v. Florida Adirondack School, 168 So. 233
(Fla. 1934).
Conceivably the ballot language quoted above could have some significance in reflecting the intentions of the voters who ratified s. 14, Art. X, State Const. I therefore cannot conclude that the ballot language is of no significance or must be completely disregarded.
In order to answer your question thoroughly, however, I must qualify this response. The courts will resort to use of extrinsic materials only when the purpose of a constitutional provision is unclear from its language and context. City of St. Petersburg v. Briley, Wild and Associates, Inc., 239 So.2d 817 (Fla. 1970); 16 C.J.S. Constitutional Law s. 29 (1956). Therefore the courts will probably not refer to the contents of the ballot provision at all unless the constitutional language is unclear on its face.
I further note that, even if the courts consider the language of the ballot provision in construing the Constitution, the courts may not accord that language great weight. The courts will not invalidate a constitutional amendment which has been approved by the voters based on a formal or technical defect in the submission. Sylvester v. Tindall, 18 So.2d 892 (Fla. 1944); Stateex rel. Landis v. Thompson, 163 So. 270 (Fla. 1935); Collier v. Gray, 156 So. 40 (1934). This rule may be based on an unspoken assumption that the voters are familiar with the provisions they have approved. This assumption is supported by the constitutional requirement that the actual text of the proposed amendment be published in each county prior to the amendment election. Section 5(b), Art. XI, State Const. For this reason, I qualify my conclusion with the suggestion that the courts may not regard the ballot language as highly persuasive in construing the Constitution.
Your second and third questions concern the meaning of the phrases `fully funded' in the ballot provision and `sound actuarial basis' in the constitutional provision. These questions may be considered together. Florida law does not require the ballot provision to reflect the exact text of the proposed amendment so long as it reflects the substance of the amendment. Section 101.161, F. S.; AGO 076-189. Presumably the Legislature, which drafted the ballot provision, intended it to reflect the substance of the proposed amendment.
The purpose of this constitutional amendment was to assure that public employee retirement pay or pension increases are adequately funded. Retirement or pension systems by their nature are subject to future claims which are potentially almost infinite, and which cannot be presently determined with mathematical certainty. For this reason, the phrase `fully funded' appearing on the ballot provision cannot mean that a system is required to maintain reserves sufficient to cover all potential claims, to a mathematical certainty. That result would be impractical, if not impossible. Rather, the phrase must mean that a system is required to maintain reserves sufficient to cover its probable claims, as prudently determined with reference to risk based on statistical and demographic computations. The term `fully' means abundantly provided or sufficient or ample. See City of Orlando v. Evans,182 So. 264, 268 (Fla. 1938).
The phrase `sound actuarial basis' appearing in the Constitution has substantially the same meaning. The phrase requires retirement and pension systems to accumulate and administer their reserves in accordance with the principles of the actuarial profession so as to cover probable claims resulting from benefit increases. An actuary is defined as:
 One whose profession is to calculate insurance risks and premiums; a person skilled in the theories and mathematical problems involved in making these calculations. [1 C.J.S. Actuary, pp. 1448-49 (1936).]
I conclude that the ballot provision is not substantially different in meaning from the constitutional provision.
Prepared by: David K. Miller, Assistant Attorney General