STATE, on relation of THOMAS B. ADAMS, an officer of the Court, *et al.,* v. J. M. LEE, as Comptroller.

166 So. 249.
Opinion Filed November 27, 1935.
Affirmed on Rehearing February 25, 1936.

642

*Thomas B. Adams, Henry P. Adair* and *Knight, Adair, Cooper & Osborne*, for Relators;

*Cary D. Landis*, Attorney General, *H. E. Carter* and *J. V. Keen*, Assistants, and *Henry C. Tillman*, for Respondent.

Davis, J.—Relators and co-relators, all of whom are *ad valorem* taxpayers of the State of Florida, by an information in the nature of quo warranto (not joined by the Attorney General because he represents the respondent Comptroller, a State officer) challenge the warrant of authority of the respondent, J. M. Lee, as Comptroller of the State of Florida, to enjoy, exercise and perform the franchises, functions and powers attempted to be vested in him by Chapter 16848, Acts 1935, an Act of the last session of the Legislature otherwise referred to in these proceedings as Senate Bill No. 724.

Since the gist of the complaint asserted by petitioners is the alleged total invalidity of the legislative Act thus brought into controversy in these proceedings, and since the predominant question of constitutionality of the involved enactment is otherwise properly in issue before this Court in companion cases which have been argued, considered and decided in connection with this case, we pass *sub silentio* the respondent's objections to the availability of quo warranto as the legal form of legal remedy authorized to be employed by the relators in their proceedings against respondent, and give our attention and consideration to the substance of petitioners' complaint against the legislative Act whose enactment has occasioned this litigation.

At the 1934 general election, the people of Florida ratified a proposed constitutional amendment completely exempting homesteads of the value of $5,000.00 (and under) from all *ad valorem* taxation insofar as it was competent for the State of Florida to accomplish such purpose within the limitations of the Federal Constitution. Under Article XII of the Constitution of Florida the primary source of revenue for the maintenance of Florida's comprehensive system of public free schools was therefore derivable from a limited *ad valorem* tax levy authorized in the several counties and special tax school districts of the State. The effect, therefore, of the adoption of the homestead tax exemption amendment was to materially reduce the public free school revenues realizable from real estate taxation, and to so reduce them as to raise grave doubts whether the public free schools could be efficiently operated in the future in the absence of a grant thereto of materially increased state financial aid which, by amended Section 9 of Article XII of the Constitution, the Legislature was given power to provide by means of any appropriate exercise of the State's revenue producing power to add to the county school fund resources.

We therefore have before us a situation wherein the Supreme Court is called upon in this case to adjudicate the limits of the constitutional power vested in the Legislature to contrive and put into operation a revenue producing excise tax measure designed to raise for the aid of the public free schools of Florida a new source of school revenue estimated to amount to approximately $4,500,000.00 in addition to the sources already provided. That Chapter 16848, Acts 1935, *supra,* is in its essence such a revenue producing measure contrived to provide for the relief of the public free schools of the State of Florida by raising reve-

nue for the County School Fund through the imposition of a special tax upon the privilege of operating a store or stores within the State, etc., according to classifications of the affected store operations for taxation purposes, as specified in the title of the Act, has been asserted by counsel for the State appearing at the bar of this Court during the oral argument of this case, and is accepted by us as true for the purposes of this decision.

That every separate tax scale set forth in Section 4 of said Act was intended by the Legislature which enacted it to be a joint and several separable act of taxation against the affected businesses, insofar as the same could be jointly or severally, or jointly and severally, sustained as being within the Legislature's constitutional power to tax, can scarcely be gainsaid in the light of the history of the Act in the Legislature and the sweeping language employed in Section 18 of the Act. This is so, because that section not only authorizes, but directs, this Court, if possible and permissible, to uphold and enforce all such part or parts as shall "be deemed and held to be valid" in and of themselves even though other "unconstitutional, inoperative or invalid" parts or provisions may have to be deleted therefrom. In short, the effect of Section 18 of Chapter 16848, *supra,* is to evidence a pronouncement that it was and is the "legislative intent to pass this (such) Act" despite the fact that it may embrace "unconstitutional, inoperative or invalid" parts which, if so adjudicated by this Court, will necessarily have to be deleted from the statute as a condition to allowing the remainder of the Act, not infected with any such vices, to stand and be enforced.

Provisions such as are found set forth in Section 18 of this Act are common in our modern legislative practice, especially in connection with revenue measures. And, when

capable of being given a definite and reasonable operation in the course of practical judicial review, and where in so doing, no absurd results will likely be brought about through their application, such provisions are ordinarily to be extended recognition and upheld as valid by the Courts, as an alternative to the bringing about of the necessity for a reconvention of the Legislature to accompish that which the Legisature itself has anticipated, set forth, determined and declared in advance it would do if actually required to be called back to perform its own act of amendment. By such means the Legislature may renounce in advance provisions that are likely to be judicially declared to be beyond the scope of constitutional exercise of legislative power, when, at the time of the law's enactment the powers of the Legislature in the premises are undefined.* See: City of De-Land v. Florida Public Service Co., 119 Fla. 819, 161 Sou. Rep. 735, 740.

Since the State Courts, in dealing with the question of the constitutionality of an Act of the Legislature, are entitled to take judicial notice of all local factual considerations apparent to the legislative department of the State government out of which the impulse for its enactment in a particular form arose (Dominion Hotel Co. v. Arizona, 249 U. S. 265, 63 L. Ed. 597, 39 Sup. Ct. Rep. 273), we proceed now to a consideration of the validity of Florida

---

*The periodic meetings of Legislative bodies are always the occasion for genuine alarm to everyone engaged in trade or industry as well as to those possessed of taxable assets. Hence the efforts of farsighted Legislators themselves to anticipate possible unconstitutional provisions in their revenue laws and to themselves provide in advance for the judicial elimination thereof without occasioning a special session of the Legislaturte for that purpose likely to disturb and unsettle business in other particulars by opening up other subjects for legislative reconsideration.

Chapter 16848, Acts of 1935, in the light of the following circumstances of which this Court may properly take judicial notice as having entered into the consideration concerning, and as having influenced the passage of, the challenged law comprehending the classifications herein objected to:

. (1) That extensive new revenues were required by the State for its contribution to aid in the operation of the common school system of, the State of Florida; (2) that the aggregate retail mercantile businesses conducted in the State were predominantly, if not wholly, supported by the patronage of parents and guardians domiciled in Florida and having children required to be educated in the common schools at public expense; (3) that a privilege tax upon all of the retail mercantile businesses of the State was therefore the most available and acceptable means of raising revenue for the schools out of the patrons of the schools, by reason of the fact that such a privilege tax, if made collectible in advance of the profit realization of the taxed privilege, would accordingly be capable of being passed on by the taxed privilege holder to the buying public in the form of additions to the sale prices of goods sold by him at retail in the stores whose privilege to operate was selected to be taxed; (4) that retail stores in the State of Florida were not all alike, but were of two classes: (a) individually owned stores locally operated as single independent establishments; (b) chain stores operated as parts of a local or general chain of stores; (5) that the chain system themselves were in turn divided into divers classes: (x) small local chains, (y) State chains, (z) national chains; (6) that where the chain systems were being operated, whether the systems were large or small, local or general, state-wide or national, not

only the chain system *qua* such system, but each and every multiple unit (store) of such chain system acquired and enjoyed an increased competitive advantage over individually owned and operated single stores to such an extent that it was fit and proper to separately classify for purposes of the proposed privilege taxation, not only the chain systems separately from the individually owned and operated stores, but to classify the chain systems among themselves according to the advantages they enjoyed over each other, as determinable by each extension of the chain system by means of successive increases in the number of multiple units established to operate as component parts of same; (7) that the common and general aggregate increased competitive opportunities and advantages possessed by chain systems considered as an integrated aggregation over competing individually owned and operated single stores, will necessarily reflect themselves, *distributively,* with respect to *each single store unit of the chain,* so as to warrant the conclusion that not only does the chain system, *as a system,* possess a classifiably greater business advantage over competing individually owned and operated single stores, but that in turn such greater *common and general* superior advantage of the chain *system* over its individually owned and operated competitive single store is necessarily reflected in corresponding *pro rata* proportions to each of the chain systems' component multiple units; (8) that therefore, not only the chain system, but each store link in the chain system, by reason of its membership as a part of a chain system, can likewise be said to enjoy an ascertainable distributive competitive advantage because of its enjoyment of a *pro rata* participation in the common and general chain system advantages and opportunities that cannot be realized nor enjoyed by any single, individually owned and operated

store not a member of some larger chain system; (9) that because each store link in a chain store system necessarily enjoys an apportionable and distributive advantage from its associate membership with other stores possessing as a chain system a common and general aggregate increased business advantage and opportunity with respect to competition, over singly owned and operated individual stores, that it is accordingly proper to classify and deal with the separate store links of each chain system as' well as with the systems themselves, and to thereupon tax each separate store link as well as the system as a whole, according to such classification; (10) that the general retail business in the State of Florida is carried on by independent stores and by chain stores in keen competition with each other, but that by reason of the superior competitive advantage of the chains over the independents that the bulk of the retail business is being gradually taken over by the chains because of their superior competitive appeal to the general buying public; (11) that the chain business is largely, if not wholly, a cash business, while the independents do mostly a mixed cash and credit business; (12) that an undue multiplication of the chains is taking place in, the State of Florida at the expense of the. ability of the independents to continue to do business at all in competition with them, thereby suggesting to the Legislature the propriety of using its taxing power to separately classify and separately tax chain stores at a higher rate   than it might tax independent stores, so as to preserve in the State of Florida a, proper and safe economic balance between the two classes of competing businesses, as well as serve the dominant purpose of raising revenue for the schools; (13) that the form of tax should be a privilege tax, but a privilege tax graduated according to the value of the privilege sought to be enjoyed; (14)

that in constructing an appropriate tax schedule, a classification should be made in it in such a manner as to tax chain store privileges at a higher rate of taxation than non-chain store privileges; (15) that because of the distributive value of a chain system's aggregate privilege to its constituent units, that the chain store privilege tax schedule should be so framed as to have it calculated per store but made collectible per system; (16) that an attempt to raise $4,500,-000.00 from privilege taxes on the aggregate of all the retail businesses in Florida would in effect amount to no more than to raising that sum of money from the customers and patrons of retail businesses in the State, who would be required to pay it in increased prices as an indirect contribution to the support of the common schools which the children of such patrons in school, both resident and tourist, made it necessary for the government to maintain at public expense for the benefit of the people; (17) that the privilege of operating retail stores comprehends two basic elements (a) the "opportunity of trade" privilege represented by the business opportunity acquired *eo instant* a stock of goods is assembled and the store doors thrown open for the negotiation of trade transaction; (b) the "trade realization privilege" which can be acquired and subsequently enjoyed only in due course of trade through the volume of business that may culminate from the exercise and actual use of the trade negotiation privilege; (18) that under the Florida decisions a privilege tax is an excise tax and is authorized by Section 5 of Article IX of the Constitution as a license tax; (19) that taxes on licenses have constituted a major source of revenue in Florida ever since the impoverishment of the South's property owners in the War between the States which first led to a general resort to that form of taxation; (20) that Chapter 16848, *supra,* was adopted by the Legis-

lature as a substitute for two other legislative proposals brought before it at its 1935 session; (21) that the two proposals for which said chapter is a substitute were (x) a general sales tax as to which many members of the Legislature were pledged opponents, and (y) a legislative attempt to legislate out of existence under the guise of the State's police power all of that class of stores commonly known as "chain stores"; (2) that in its last analysis while Chapter 16848, *supra,* is a revenue measure primarily designed and intended to raise additional revenue for the public schools, yet at the same time it has been so framed by the Legislature as to press to its utmost constitutional limits, if not beyond, the State's legislative power to promote the social and economic well being of its merchant classes by so burdening that class of stores known as chain store with unnecessarily burdensome privilege taxes on each extension of the chains, as to discourage extensions of their business operations in this State to the competitive elimination of individually conducted and owned retail store; (23) that Florida being a tourist state whose policy is to give education free to the children of tourists, as well as citizens, was forced to seek methods of realizing revenue that would exact it from retail trade done by persons in this State.

A legislative determination essentially comprehended in a State statute, is conclusive upon the Courts if under any possible state of facts the Act would be constitutional, assuming the supposable state of facts to be true insofar as they are not overcome by facts contrary thereto of which the courts must take judicial notice. Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. Rep. 992, 1257, 32 L. Ed. 253; Rast v. Van Deman & L. Co., 240 U. S. 342, 36 Sup. Ct. Rep. 370, 60 L. Ed. 679. With this rule in mind let us thereupon proceed to a consideration of the constitutionality

of the Act now before the Court in the light of the facts and circumstances herein before related of which we have taken judicial notice.

The scope of judicial inquiry in deciding a question of *power* is not to be confused with the scope of legislative considerations in dealing with a matter of policy. Whether the enactment is wise or unwise, whether it is based upon sound or false economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the Legislature, and the earnest conflict of serious opinions does not suffice to bring them within the scope of judicial cognizance. Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 549, 31 Sup. Ct. Rep. 259, 55 L. Ed. 328. Nor, where *power* to tax exists, does a State deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such way as to favor certain businesses or classes of business or industry, if there be any ground for separate classification of the same for taxation purposes. Quing Wing v. Kirkendall, 223 U. S. 59, 32 Sup. Ct. Rep. 192, 56 L. Ed. 350.

The advantage of the chain store system of retail merchandising, as compared with the independent store system, may be summarized as follows:

(a) A centralized and highly specialized organization, directing and controlling the business of each unit in the whole system, giving the whole system the advantage of superior business ability thus developed, the cost of which is spread over a large number of units and, therefore, at greatly reduced percentage of cost for such organization and ability for each unit. The overhead for this for each store is infinitesimal.

(b) Development of an accounting system, uniform throughout the system, standardized and arranged with minuteness.

(c) Development of display methods, giving to each store in the unit the experience of each store in the chain, passed on and utilized by all stores in the system.

(d) Huge buying power, which enables the organization to buy from the manufacturer and others in large quantities, the goods to be ordered out and distributed to each store in the unit at the standard price, by which means the system is able to buy at a cheaper price or greater trade discounts than the single unit merchant.

(e) The handling of staple or standardized goods.

(f) A quicker turn over of goods and the ability to transfer goods from one store in the chain to another.

(g) The establishment of a good-will *by each store* in the chain and extending from *each store* in the chain *to every other* and thus attracting customers, not simply to one store, but *to every store* in the system.

That the competitive advantages of the chain store system of retail stores over the locally owned and privately merchandised stores has resulted in the chain store system's marked invasion of the field of trade theretofore predominantly occupied by the independents, so as to seriously impair, if not destroy, the ability of the independents to compete on equal terms with the chains, has been officially investigated and established in public and private researches made from available data on the subject, much of which has been referred to, or incorporated in, the pleadings in this case, although it is of such character that we would be warranted in judicially noticing this factor had same not been pleaded.

And that such competitive advantages possessed by the chains are legally sufficient to sustain a classification of chain stores and chain store systems for purposes of taxation at different rate, or on a higher tax scale, than the locally owned or privately merchandised independent stores, is now beyond the range of successful refutation in the light of settled State and national court decisions on the subject of classification and taxation of chain stores and independent individual stores at different rates or according to variant methods. Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 Sup. Ct. Rep. 481, 77 L. Ed. 929, 85 A. L. R. 699; Fox v. Standard Oil Co., 294 U. S. 87, 55 Sup. Ct. Rep. 333, 79 L. Ed. 780; Great Atlantic & Pacific Tea Co. v. Maxwell, 284 U. S. 575, 52 Sup. Ct. Rep. 26, 76 L. Ed. 500; State Board of Tax Comm'rs v. Jackson, 283 U. S. 527, 51 Sup. Ct. Rep. 540, 75 L. Ed. 1246, 73 A. L. R. 1464; 75 A. L. R. 1536; Louis K. Liggett Co. v. Amos, 104 Fla. 609, 141 Sou. Rep. 153, 172, 109 Fla. 477, 149 Sou. Rep. 8; Penney Stores v. Mitchell, 59 Fed. (2nd) 789; Southern Grocery Stores v. South Carolina Tax Com., 55 Fed. (2nd) 931; J. C. Penney Company v. Diefendorf, 54 Idaho 373, 32 Pac. (2nd) 784; Lane Drug Stores v. Lee, 11 Fed. Supp. 672 (decided July 29, 1935, and involving Chapter 16848, which is the Act under attack in this case); Great Atlantic & Pacific Tea Co. v. Valentine (Iowa Statute), decided November 19, 1935, 12 Fed. Suppl. 760; Ed Schuster & Co. v. Henry (Wis.), 261 N. W. Rep. 20; Safeway Stores, Inc., v. Vigil (New Mexico), 57 Pac. Rep. (2d), 287; Great Atlantic & Pacific Tea Co. v. Harvey, 107 Vt. 215, 177 Atl. Rep. 423.

Section 4 of Chapter 16848, Acts 1935, General Laws of Florida, reads as follows:

"Section 4. TAX. For the privilege of continuing in or

engaging in the business of a retailer as defined in this Act, there is hereby imposed upon every person, firm, corporation, association or co-partnership, trust or joint stock company, and any firm however organized or whatever be the plan of operation, shall under the terms of this Act be required to obtain a permit or license to operate a store in this State, a tax which shall be equal to the amount due under the provisions of Subdivision A, and the amount due under the provisions of, Subdivision B of Section 4 of this Act; in order to equitably and properly fix the formula upon which the herein license fees shall be based and so that the factor of number of stores and the factor of amount of business done under the privilege shall be included in the formula. The specific amount to be determined as follows:

"SUBDIVISION A.

"CLASS 1.   Upon one store, the flat sum of $10.00.

"CLASS 2.   Upon chains of more than one, but not more than three stores, the flat sum of $50.00 for each said store.

"CLASS 3.   Upon chains of more than three, but not more than six stores, the flat sum of $100.00 for each said store.

"CLASS 4.   Upon chains of more than six, but not more than ten stores, the flat sum of $200.00 for each said store.

"CLASS 5.   Upon chains of more than ten, but not more than fifteen stores, the flat sum of $300.00 for each said store.

"CLASS 6.   Upon chains of more than fifteen stores the flat sum of $400.00 for each said store.

"SUBDIVISION B.

"CLASS 1.   Upon one store, also an amount equal to one-half of one per cent of the gross receipts from all sales as defined in this Act.

"CLASS 2.   Upon chains of more than one, but not more than three stores, also an amount equal to one per cent. of the gross receipts from all sales defined in this Act.

"CLASS 3. Upon chains of more than three, but not more than six stores, also an amount equal to two per cent. of the gross receipts from all sales as defined in this Act.

"CLASS 4. Upon chains of more than six, but not more than ten stores, also an amount equal to three per cent of the gross receipts from all sales as defined in this Act.

"CLASS 5. Upon chains of more than ten, but not more than fifteen stores, also an amount equal to four per cent. of the gross receipts from all sales as defined in this Act.

"CLASS 6. Upon chains of more than fifteen stores, also an amount equal to five per cent. of the gross receipts from all sales as defined in this Act.

"The tax imposed under Subdivision B of this section shall be calculated upon the gross receipts of the total number of stores in each respective chain concerned at the rate prescribed in the applicable 'class' bracket of the foregoing schedules.

"If the tax in Subdivision B of this section be, for any reason, held invalid and inoperative, then the taxes in each of the six classes of stores enumerated in Subdivision A of this Section shall be twice the amount set forth in said Schedule A, in lieu of the rates therein prescribed."

The authorities last hereinbefore cited are ample to sustain the constitutionality of the whole of "Subdivision A" of the general privilege tax schedule above quoted *unless,* as contended by complainants in this case, the tax provided in that schedule, being provided to be calculated and imposed upon *each separate store* in the specified classifications, but made collectible from the group, is rendered unconstitutional as an entirety because of that feature alone, or is at least rendered unconstitutional as to every class in that subdivision except the class designated as Class 1 of Subdivision A.

Our conclusion on this score is that the power to separately classify and tax chain stores being established as proper and lawful to be exercised by the State through its legislative enactments, that the *distributive* special advantages accruing to each store as a unit in the chain, as well as to the chain system considered as a whole, constitutes sufficient constitutional warrant to likewise sustain the imposition and collection of the authorized special chain store tax upon each separate store in the chain *pari passu,* and that there is no express or implied constitutional requirement of either the State or Federal Constitutions that operates to limit the taxation of the constituent units of the chain to a progressively ascending rate on the several stores which in the aggregate are legally susceptible of being separately classified and dealt with for taxation purposes by reason of their aggregate relationship to each other as parts of a single chain system. Indeed, such method of uniform and equal *spread* of the total chain system tax proportionately to each separate store in the chain, is not only justified by what we have hereinbefore pointed out as the unitary advantages that inevitably accrue to each separate store in a chain considered as a separate store unit possessed of special and peculiar membership privileges by reason of its being part and parcel of the larger system to which it belongs, but has been adopted and approved in the State of Idaho where the tax scale is not a progressively ascending one, as in the Indiana, Florida and Virginia cases, in which latter cases a statutory scheme for a progressively ascending scale of taxation on chain stores has been heretofore sustained as valid by the United States Supreme Court in the case of State Board of Tax Comm'rs v. Jackson, *supra,* Louis K. Liggett Co. v. Lee, *supra,* and Fox v. Standard Oil Co., *supra.* Compare the opinion of the Supreme Court

of Idaho in the case of J. C. Penney Co. v. Diefendorf, 54 Idaho 374, 32 Pac. (2nd) 784.

We hold, therefore, on principle, as well as on authority, that the Legislature's power to classify chain store systems as subjects for a different scheme of taxation on the merchandising privileges enjoyed by the system considered as a separately classifiable whole, may be exercised *distributively* as to each separate store unit in the chain store system by treating the first store in the system as being as much subject to the same proportionate part of the whole system's aggregate tax as is the last store in the identical system, and that the whole of Subdivision A of Section 4 of Chapter 16848, *supra,* is a valid and enforceable tax schedule. In other words, the classification of the group may extend to each store unit in the group. And in enacting special State laws for the special taxation of the privilege of operating chain stores, the Legislature may lay the tax on the privilege enjoyed by the whole system, by either stating it in terms of a progressively ascending scale increasing at intervals with each extension of the chain beyond the intervals specified, or it may impose an aggregate tax on the chain system as a unit in an amount reasonably appropriate to be exacted from the system as a whole, and provide for its collection in fixed proportions, or in equal amounts or from each separate store unit in the system without discrimination between the constituent stores, as the Legislature may see fit, and as has been done in the Florida statute.

The fact that the Idaho statute, and the 1935 Florida statute, have each departed from the progressively ascending scale plan of chain store system taxation, involves the application of no unjustly discriminatory principle of taxation as applied to chain stores as subjects for the special

taxation heretofore sustained by the Courts as valid for application to them, because the first store in a chain as well as the last store in the same chain, necessarily acquires and possesses, as a member of, the chain of which it is a part, a distributive or proportionate part of the common and general advantage that accrues to the system organization and method of operations, such, for example, as the establishment of good will by each store in the chain and extending from each store in the chain to every other and thus attracting customers, not simply to one store, but to every store in the system whether it be No. 1 or No. 16, etc., as hereinbefore outlined in the enumeration of advantages previously stated in this opinion. As was specifically pointed out by the Supreme Court of the United States in the case of Louis K. Liggett Co. v. Lee, 288 U. S. 517, 77 L. Ed. 929, 53 Sup. Ct. Rep. 481, 85 A. L. R. 699: "The addition of a store to an existing chain is a privilege, and an increase in the tax *on all the stores* for the privilege of expanding the chain cannot be condemned as arbitrary." (Emphasis supplied.) The 1935 Florida statute (Chapter 16848, *supra*) simply carries out the principle of law last stated by taxing each store in the chain a specified part of the whole tax imposed for an extension of the chain, instead of confining the tax incidence entirely to the added link or unit of the chain by which its extension was brought about.

Having found that the whole of Subdivision A of the tax specified in Section 4 of this Act is valid, we now turn to a consideration of the constitutionality of the schedule designated in that section as Subdivision B.

Class 1 of said Subdivision B imposes, in addition to the scale of taxes imposed by Subdivision A, a special privilege tax measured by "the gross receipts from all sales as defined in this Act," but limits the tax as to single stores to one-half

of one per cent. Since in Class 1 of Subdivision B the phrase "all sales as defined in this Act" must necessarily be so construed as to comprehend "all sales made" by more than one store, as well as by one store alone. If Classes 2, 3, 4, 5 and 6 of said Subdivision B are judicially deleted as invalid, it is obvious that Class 1 of Subdivision B, if by itself valid, must be so construed and extended as to be applicable to each of the stores in the several classes of stores defined in Classes 2, 3, 4, 5 and 6, of the same Subdivision, if the attempt to create said subsequently numbered classes should be found to have been frustrate and void because of the lack of any constitutional power to graduate the gross receipts privilege tax, in addition to imposing it on the affected merchandising establishments.

Both Subdivision A and Subdivision B are cognate scales intended to be applied to the same privilege beneficiary, but not necessarily on the same elements of privilege authorized to be taxed. As has been indicated in the preceding pages of this opinion, the taxes provided for by "Subdivision A" are in effect "opportunity" privilege taxes, *i. e.*, a tax on the licensed opportunity implied in the merchant's privilege of assembling a stock of goods and opening his store doors for the purpose of negotiating with customers to sell it. In this Subdivision the tax is laid in proportion to the value of the anticipated privilege *expected* to be realized.

On the other hand, the tax laid by Subdivision B, while a privilege tax, is nevertheless a tax laid on the privilege of realization implied in, and measured by, the receipt and enjoyment of the gross receipts of business *actually transacted*.

By subdividing the taxed privilege of operating a retail merchandising business into its discernible aliquot parts (a) the opportunity privilege, and (b) the realization privilege,

and thereupon applying to each segment a separate scale of tax incidence for the purpose of admeasuring the value of the exercise and enjoyment of the two elements that are enjoyable only in combination, the Legislature has merely sought to make Subdivision B of the schedule an equalizing factor so designed as to overcome whatever injustices may be wrought through the application of Subdivision A standing alone. By this means, a single store falling within Class 1 of Subdivision A may acquire a license to open for business by paying an opportunity privilege tax of but ten dollars, while a competing chain store belonging to Class 6 of Subdivision A would be required to pay an opportunity privilege tax of four hundred dollars because of its greater initial advantage (opportunity) as member of a chain system over that of the single individually operated and merchandised store implied in the mere opening of the store for the negotiation of trade. On the other hand, should the single store in Class 1 of Subdivision A be so situated, geographically or otherwise, as to realize gross receipts equal to, or greater than, an entire chain of stores in Class 6 of Subdivision A, then the application of Subdivision B tends to bring about an equality of burden between the single store and the chain by making up on the realization privilege tax what it initially diminished on the opportunity privilege tax in favor of the single individually operated and merchandised store at the outset of the taxable privilege period.

We must, therefore, reach the conclusion that the application of the whole of Subdivision A together with the application of the rate specified in Class 1 of Subdivision B to each of the stores comprehended in Subdivision A, prescribes a valid scheme of privilege taxation that must be sustained by this Court on the authority of the Chain Store

Tax decisions of the State and United States Courts hereinbefore cited as well as our own decision in City of De-Land v. Florida Public Service Co., 119 Fla. 819, 161 Sou. Rep. 735, 740, in which latter case it was decided by this Court that a privilege tax capable of being calculated in the cost of doing business and thereupon passed on to the ultimate consumer, although provided to be measured by the volume of business already done during a preceding specified period of time, would be sustainable and enforceable as a valid license (privilege) tax, if not otherwise so unreasonably burdensome as to amount to spoliation under the guise of privilege taxation.

This brings us to a consideration of the proposition whether or not the same classification that has been found constitutionally adequate to sustain the classification and graduated taxation scale of Subdivision A of Section 4 of the Act, will likewise be constitutionally adequate to sustain the constitutionality of the attempted graduated taxation scale of Classes 2, 3, 4, 5 and 6 of Subdivision B of the same section.

Our conclusion is that it will not, for the following reason: The "realization" privilege, when contrived to be burdened with a license tax measured solely by the gross sales or gross receipts realized in the course of exercise of the taxable privilege, so proposed to be charged for as a means of raising revenue, is in its nature variable solely and only according to the amount of the realization, and not by the nature or quality of the instrumentality of realization. Thus the privilege of realizing one million dollars of gross receipts on the part of a single store is inherently in the same classification as is the privilege of a system of more than one store to realize one million dollars in gross receipts from its system operations. To put it another

way, the privilege of enjoyment (or realization) is the same as to each dollar realized, whether the realization be from a single place of business or from a group of business places considered in the aggregate. A privilege tax measured by the amount of gross receipts realized in the conduct of a business during a specified period of computation, if classified as is done in Subdivision B for the imposition of a varying rate of taxation solely predicated upon the character of business by which the same given amount of gross receipts might be realized, would inherently so operate as to exact from two persons enjoying exactly the same privilege, different amounts for doing exactly similar acts merely because the one has adopted one method of exercising the privilege while the other has chosen a different method.

Thus understood, the operation of Classes 2, 3, 4, 5 and 6 of Subdivision B of Section 4 of Chapter 16848, *supra,* is unjustifiably unequal, whimsical and arbitrary and results in such a glaring inequality of burden on the privilege the enjoyment of which is made the subject of the tax, as to amount to a denial of the equal protection of the laws in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States. This conclusion is supported by the *rationale* of the majority opinion in Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 Sup. Ct. Rep. 525, 79 L. Ed. 1054, decided March 11, 1935, although that case dealt with a graduated sales (transaction) tax and not a privilege (license) tax measured by the volume of gross receipts for a given period graduated according to the character of business done, as is the case now before this Court. See: Great Atlantic & Pacific Tea Co. v. Valentine, 12 Fed. Suppl. 760 (decided November 19, 1935, by United States 3 Judge Court, Southern District of Iowa).

The net result of our holding is that we decide that the

tax provided in Subdivision A of Section 4 of Chapter 16848, *supra,* is valid in its entirety and that Subdivision B of the same section is invalid as to Classes 2, 3, 4, 5 and 6 insofar as said Classes 2, 3, 4, 5 and 6 attempt to impose a privilege tax measured by gross receipts in excess of one-half of one per cent. as provided in Class 1 of said Subdivision B. Our conclusion deciding the partial invalidity of Subdivision B as to Classes 2, 3, 4, 5 and 6 does not necessarily destroy said Subdivision B in its entirety, but leaves the excess in the prescribed rates of taxation only to be deleted from that subdivision, thereby making each class of said Subdivision B read as if it imposed a uniform one-half of one per cent. in Classes 2, 3, 4, 5 and 6, as well as in Class 1.

Under Section 18 of Chapter 16848, *supra,* this Court is not only authorized, but directed, to delete whatever from the Act may be found "inoperative" in order that what may be operative shall be allowed to stand and be enforced as the valid will of the Legislature. This we can accomplish by deleting merely the excessiveness of the rate of tax prescribed in Classes 2, 3, 4, 5 and 6 of Subdivision B of Section 4 of the Act, without deleting the affected classes, because the only vice to be found in said classes is an excessiveness in the rate of tax prescribed for Classes 2, 3, 4, 5 and 6 as compared to the prescribed rate specified in Class 1. The ultimate effect is to apply the rate of Class 1 of Subdivision B to all of the several classes specified in that subdivision, and thus construing the subdivision to be now rendered "operative" by the elimination of the "inoperative" features originally contained in it, to allow the valid part of said Subdivision B to stand and be enforced as a valid provision of said Section 4 of Chapter 16848 in conjunction with the whole of Subdivision A of the same section.

It is next contended that the title to Chapter 16848, Acts

1935, *supra,* expresses more than one subject and matter properly connected therewith, in violation of Section 16 of Article III of the Constitution relating to the form of enactments. Our conclusion on this point is that Senate Bill No. 724 is not susceptible of criticism as an attempted Act designed to accomplish separate and disassociated objects of legislative effort and that the title is not so restrictively misleading as to the substance or the body of the legislation intended to be brought within the compass of the subject as expressed in the title, as to render the Act violative of Section 16 of Article III of the Constitution. See: State, *ex rel.* Landis, v. Thompson, 120 Fla. 860, 163 Sou. Rep. 270, and cases cited on this proposition.

Whether or not Chapter 16848 (Senate Bill No. 724) was completely enacted, certified and presented to the Governor during the regular session of the 1935 Legislature is solely determinable by the official journals of the Legislature so long as they are fair on their face and have not been impeached or amended in direct proceedings instituted for that purpose by an affected party prejudiced by an attempted Act of a Legislature that had lost its jurisdiction to legislate, as averred in one of the grounds of complaint in the amended information filed in this case. See: State, *ex rel.* Lane Drug Stores, v. Simpson, decided November 26, 1935, as the leading case in the series of cases involving Chapter 16848, of which this case is one.

Insofar as Chapter 16848 may have comprehended an intention on the part of the Legislature to in effect prohibit the chain store method of merchandising through the imposition of the *graduated* gross receipts privilege tax features of Subdivision B of Section 4 for that purpose, the elimination of the *graduated* feature of the tax leaves this complaint without support and cures that objection of in-

validity as effectually as if the objectionably oppressive feature of the Act had never been incorporated therein.

Neither do we find the Act unconstitutional by reason of the exemptions specified in paragraph (f) of Section 2 of Chapter 16848, *supra*. This is so, because each of the so-called exemptions relates entirely to items otherwise specially taxed under the laws of Florida, or which are definitively eliminated from the scope of general language otherwise capable of being construed to include same contrary to the scheme of taxation intended by the Legislature to be brought into practical operation. See: Louis K. Liggett Co. v. Lee, *supra*.

Nor is the Act invalid because of a material variance between the title and body of the bill as introduced and as engrossed by the engrossing Committee of the Senate and House on one hand, and what appears to be the title and body of the bill as finally enrolled. Considering the enrolled bill and the journal entries as a whole, whatever error was committed in the recordation of the title in one place appears to be a self-correcting one apparent on the face of the journal entries themselves, considered in their entirety; therefore, it cannot be said that this case is within the rule of Volusia County v. State, 98 Fla. 1166, 125 Sou. Rep. 375, and State, *ex rel*. Landis, v. City of Sanford, 113 Fla. 750, 152 Sou. Rep. 193, wherein it appeared that the journals failed to show that the same bill passed both House of Representatives and the Senate.

Since the provision for doubling the tax specified in Subdivision A in the event Subdivision B is declared invalid depends for its effectiveness upon a decision by the Courts holding *all* of said Subdivision B of Section 4 of the Act invalid in its entirety, the doubling provision now has no effective operation since, as has been pointed out, Subdi-

vision B has not been by this opinion to be "invalid and inoperative" as a whole.

If, as argued with reference to the special appropriation made by Section 15 of Chapter 16848, *supra,* said appropriation for school purposes is invalid under Sections 7, 9 and 15 of Article XII of the Constitution, the complete elimination of said appropriation section would, under Section 18 of the same Act, be ineffective to destroy the provisions of Section 4 of the Act as to taxation, therefore that objection will not be passed upon in this proceeding, but will be left for decision at such future time as circumstances may require the point to be passed upon in due course of procedure.

We agree with relators in this case that the State Legislature may not, under the guise of a taxing Act, under whatever form constructed, consistent with Sections 1, 4 and 12 of the Florida Constitutional Declaration of Rights, and consistent with Section 5 of Article IX and Section 29 of Article XVI of the State Constitution, deliberately destroy and confiscate useful and lawful retail merchandising businesses at the behest of, or for the benefit of, some other particular group of citizens possessing sufficient political prestige to coerce such Act through the Legislature, but our investigation of the facts of this case has failed to reveal where any such attempt has been made, except possibly in Classes 2, 3, 4, 5 and 6 of Subdivision B of the tax schedule set up in Section 4 of said Chapter 16848, *supra,* and as to the latter provisions, we have already pointed out that their complete elimination from the Act on other grounds has removed the Act from the scope of judicial condemnation on the ground last above stated.

The demurrer to respondent's plea and answer is accordingly overruled.

WHITFIELD, C. J., and TERRELL, J., and FRANK A. SMITH, Circuit Judge, concur.

BROWN, J., concurs in the conclusion.

BUFORD, J., dissents in part.

BUFORD, J. (dissenting in part).—I dissent from the opinion prepared by Mr. Justice DAVIS in this case to the extent and for the same reasons set forth in the opinion dissenting in part in the case of State of Florida, *ex rel.* Lane Drug Stores, Incorporated, a corporation, v. Clyde H. Simpson, as Tax Collector of Duval County, Florida.

FRANK A. SMITH, Circuit Judge (concurring specially).— I concur in the most able opinion of Mr. Justice DAVIS, except that I am unable to agree that quo warranto will lie to test the right of the Comptroller to enforce the Act because of its invalidity.

The remedy of information in the nature of quo warranto which is the successor to the ancient writ of quo warranto may be used to test the right of an incumbent to a public office or the right to exercise a franchise, but that is the limit of the scope of such a proceeding.

Clearly no right or title to office is involved in the instant case, but there is an attack upon the validity of a statute and the authority of the defendant Comptroller to enforce the Act. In substance the relief sought is the prevention of the performance of duty imposed upon him by Senate Bill No. 724, and that is the extent to which any ouster could be granted. The proper remedy would be by injunction to restrain the performance of the statutory duties on the ground of the invalidity of the statute.

Neither does the Act create or grant any privilege or franchise, or immunity, the usurpation of which could be relieved against by quo warranto. A franchise may be granted to an individual or a corporation, but one does not

ordinarily think about any power given to or duty imposed upon a public officer as being a franchise. In the great number of cases examined none has been found in which a "franchise" was granted to an officer, but they refer to or show the grant as being either to a corporation, a person, a citizen or an individual.

While I cannot agree that quo warranto is a proper remedy and hence am of the opinion that the demurrer should be visited back upon the information, yet I consider it proper to concur in the conclusion that the defense is sufficient against demurrer, for a bad plea is a good defense to an unfounded writ.

My concurrence in the decision is with my understanding that it is the attitude of the Court to pass over without deciding the question of the availability of quo warranto as a remedy in such a case, so that the action here is not to be construed as creating a precedent for extending the scope of that extraordinary remedy. By reason of the fact that this is one of several cases before the Court involving the constitutionality of the statute and with substantially the same issues in each case, it has been considered expedient yet consistent with orderly procedure to overlook the matter of form in technical procedure in this particular case and consider the substance on its merits in the entire group of companion cases. Neither party is harmed, for the relators have obtained the judgment of the Court on the issues they brought before it in their freely chosen form of remedy and the respondent cannot be injured because the decision is in his favor. No precedent has been established and there should be no danger that anyone may be misled in relying upon this holding as authority for and thereby mistaking the extent of the limits of the use of quo warranto.