D. C. Coleman, as Sheriff, v. State *ex rel.* Sam Cass

198 So. 695
En Banc
Opinion Filed August 2, 1940
On Rehearing November 19, 1940

*George Couper Gibbs,* Attorney General, and *John L. Graham,* Assistant Attorney General, for Plaintiff in Error;

*Richard H. Hunt* and *George H. Salley,* for Defendant in Error.

CHAPMAN, J.—On June 24, 1940, Sam Cass was taken into custody under a warrant issued by the Justice of the Peace of the Second District of Dade County, Florida, charging that one Sam Cass did unlawfully use a motor boat, to-wit: 10T499 named "Swanee, Jr." for the purpose of fishing, without license, contrary to Chapter 17917, Acts of 1937.

On a petition for a writ of habeas corpus filed in the Circuit Court of Dade County, it was contended that the affidavit and warrant failed to charge a criminal offense under the laws of Florida and that the statute and Act under which the same were drawn were: (a) unconstitutional and void; (b) denied the petitioner the equal protection of the law; (c) deprived him of his liberty; (d) confiscated his property; (e) the said charge in the affidavit and warrant in effect meant the imprisonment of the petitioner for a debt.

The writ of habeas corpus issued and the return thereon as made by the Sheriff of Dade County was that he held the petitioner under a warrant charging the violation of Chapter 17917, Acts of 1937, Laws of Florida, and counsel for the respective parties entered into a stipulation as to facts, viz.:

"It Is HEREBY STIPULATED AND AGREED by and between Richard H. Hunt, as attorney for petitioner, Sam Cass, and G. A. Worley, as attorney for the respondent, D. C. Coleman, as Sheriff of Dade County, Florida, as follows:

"That petitioner is the captain of the boat "Swanee, Jr.," lying in Miami harbor, which said boat is the property of John Hagan; that the said boat is not used in connection

with or as a unit of the fishing industry in any respect, but is used exclusively by the owner for pleasure in yachting and fishing in and about the southeast Florida waters, and in the British West Indies, and that the only type of fishing which the petitioner or the owner, or any guest or invitee upon or making use of said craft, indulges or engages in, is sport fishing by the use of hooks and lines, or rods and reels; that no nets, seines or traps of any description have ever been used upon or in connection with the operations or use of said boat."

On final hearing the lower court discharged the petitioner from custody and the material portions of his order are, viz.:

"The court finds no provisions or terms in the said 1937 Act which could possibly be construed as repealing, either expressly or by necessary implication, any of the terms or provisions of the 1915 Act aforesaid, and particularly the section of said Act which specifically exempts hook and line and rod and reel fishing and fishermen from the terms of said legislation. Construing said statutes together and in *pari materia,* the court feels compelled to determine and adjudicate the issues of this cause in favor of the petitioner.

"It Is THEREFORE ORDERED AND ADJUDGED, as follows:

"1. That Chapter 6877, Acts of 1915, does not apply to fishing boats or person fishing only with hook and line, or with rod and reel or similar device, and that in fact, persons and boats within this classification are specifically exempt from the terms of said Act. The court further finds that said exemption section and provision, though not specifically carried forward by Chapter 17917, Acts of 1937, is nevertheless continued and maintained in full force and legal effect, both by the express and implied terms of the said 1937 Acts, and that therefore the payment of a license tax

or the procuring of any license is not required of persons or boats falling within the aforesaid class.

"2. That in view of these foregoing, the petitioner, who admittedly fishes only with hook and line, or with rod and reel, and hence falls or comes within the exception and exemption provision of the legislation as hereinabove defined and set forth, has committed no offense punishable by or under the terms of either of the aforesaid Acts, and accordingly the respondent, D. C. Coleman, as Sheriff of Dade County, Florida, is ordered and directed forthwith to discharge and release the petitioner from custody."

From the final judgment entered by the Circuit Court discharging the petitioner from custody, a writ of error was sued out and on appeal perfected to this Court and the order of discharge is assigned as error.

The first question propounded by counsel for appellant is, viz.: Is one person who operates a privately owned boat for the purpose of non-commercial sport fishing by the use of hooks and lines, or rods and reels, required to obtain a license on said boat under the provisions of Chapter 17917, Acts of 1937, Laws of Florida?

Section 1 of the Act provides:

"Section 1. That from and after the passage of this Act, there shall be a license required of all boats engaged in or having to do with fishing, such boats being defined as all boats, vessels, schooners and launches that ply in or operate in the tide or salt waters of the State of Florida, engaged in any way in fishing or transporting fishermen or fishing parties or otherwise having to do with fishing or sea foods or other products of the sea or salt waters of the State of Florida. All such boats, vessels, schooners or launches before beginning activities or operating must first procure a license from the Supervisor of Conservation, and for this

purpose the owner or owners, captain or agent of such boat, vessel, schooner or launch must present in writing to the said Supervisor of Conservation an application setting forth the name, number, if any, and description of such boat, vessel, schooner or launch, name and post office of owner or owners, together with such further data or information as the Supervisor of Conservation shall deem necessary, upon blanks to be furnished by the Supervisor of Conservation and thereupon the Supervisor of Conservation shall register such boat, vessel, schooner or launch and issue necessary license upon payment therefor and all licenses shall be issued and granted to the boat, vessel, schooner or launch according to the following schedule:

"Boats under sixteen (16) feet long and under four (4) feet beam, One ($1.00) Dollar and Five (05c) cents; boats over sixteen (16) feet long and over four (4) feet beam, Twenty (20c) for each additional foot or fraction thereof of length or beam."

The Legislature intended that all boats, engaged in or having to do with fishing as defined, *supra,* which operate and ply in the tide or salt waters of Florida, which may transport fishermen of fishing parties or in any way engage in fishing or otherwise having to do with fishing or sea foods or other products of the sea in the salt waters of Florida, should obtain a license. It is admitted that the boat, "Swanee, Jr.," is used exclusively for pleasure by the owner, or guests or invitees in sport fishing by the use of hooks and lines, or rods and reels, and used in and about the southeast Florida Waters and the British West Indies. It appears from the facts agreed to and the quoted provision of Chapter 17917, Acts of 1937, a license is required unless exempt under the provisions of Chapter 6877, Acts of 1915, Laws of Florida.

Counsel for appellee contends that the language, viz.: "The payment of a license tax or the procurement of any license shall not be required of persons fishing with hook and line or with rod and reel or similar device, except as herein otherwise provided," appearing in Chapter 6877, Acts of 1915 (Section 1837 C. G. L.) is preserved to the appellee provided the same is correctly interpreted or ·construed by this Court. Section 7 of Chapter 17917, Acts of 1937, provides that "this law does not repeal any general, local or special Act or law, but shall be considered and construed as supplementary thereto."

It was the intention of the Legislature in the enactment of Chapter 6877, Acts of 1915, to require a license for boats and vessels engaged in salt water commercial fishing, as shown by Sections 1, 10 and 14 thereof, and some of the material language employed is, viz.:

"Sec. 14. * * * Any and all boats or vessels engaged in the fishing industry in the salt waters of the State, before beginning operations, must first procure a police license from the Commissioner of Agriculture, and for this purpose the owner, captain or agent of such vessel must present in writing to the said Commissioner of Agriculture an application setting forth the name and description of such vessel, name and post office of the owner, the number of nets carried by such boat, and any such further data as said Commissioner of Agriculture shall deem necessary, on blanks to be furnished by the Commissioner of Agriculture, and thereupon the Commissioner of Agriculture shall register such boat or vessel and shall issue necessary license on payment of cost thereof. All licenses shall be granted to the boats or vessel according to the following schedule:

"Boats under 16 feet long and under 4 feet beam, $1.00. Boats over 16 feet long and over 4 feet beam, 20 cents for

each additional foot or fraction thereof of length or beam.

"Provided, that any person paying the above license shall not be required to pay an additional license for fishing in any fresh water."

The Legislature was dealing with salt water commercial fishing in the enactment of Chapter 6877, and several years thereafter in the enactment of Chapter 17917, Acts of 1937, undertook to regulate non-commercial salt water fishing or sport fishing by requiring a license for boats used in connection therewith. The exemption claimed to be preserved to the appellee appearing in Chapter 6877 was not carried forward, included in or made a part of Chapter 17917, *supra,* but the latter Act applies to and regulates a separate and distinct field of legislation from that appearing in Chapter 6877. One Act Applies to salt water commercial fishing, while the other Act applies to non-commercial salt water sport fishing. The Legislature has the power to classify business for the purpose of regulation and for taxation. See Mayo v. The Polk Co., 124 Fla. 534, 169 So. 41; State *ex rel.* Adams v. Lee, 122 Fla. 639, 166 So. 249.

It is next contended that the license required by Chapter 17917, *supra,* is a property tax and contravenes Section 1 of Article IX of the Constitution of Florida in that the equality and uniformity requirement is not observed.

The tax imposed is on the use of the boat when in use in non-commercial sport fishing in the salt water of Florida. The Legislature has the power under the Constitution to impose excise or license taxes within its discretion. See Sheip Co. v. Amos, 100 Fla. 863, 130 So. 699; Amos v. Gunn, 84 Fla. 285, 94 So. 615; Hiers v. Mitchell, 95 Fla. 345, 116 So. 81.

Many strong arguments have been advanced against the tax imposed under the provisions of Chapter 17917, *supra,*

some of which appear to be meritorious, but this Court is helpless under the law in granting relief. Many of these arguments should be addressed to the Legislature as this Court cannot pass on the wisdom or folly of legislation.

For the error pointed out the judgment appealed from is hereby reversed and the petitioner remanded for trial under the warrant in the Justice of the Peace Court of Dade County, Florida.

. It is so ordered.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN, J., dissents.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### ON PETITION FOR REHEARING

PER CURIAM.—The defendant in error has filed a petition for a rehearing in this cause.

Upon consideration of said petition and further consideration of the record and briefs filed herein, we reach the conclusion that our opinion and judgment filed on August 2, 1940, reversing the judgment appealed from and remanding petitioner, Sam Cass, for trial under the warrant in the Justice of the Peace Court of Dade County, Florida, should be adhered to.

It is so ordered.

TERRELL, C. J., WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.

### ON PETITION FOR REHEARING

BROWN, J. (dissenting).—I dissent to the original opinion

in this case and on this petition for rehearing I think I should state the grounds for my dissent.

In the first place, I am of the opinion that the exemption provision contained in Section 14 of Chapter 6877 of the Laws of 1915, is retained and preserved in full force and effect, as applied to the provisions of Chapter 17917, Acts of 1937, by reason of Section 7 of Chapter 17917.

Chapter 6877 imposes a license tax on any and all boats or vessels engaged in the fishing industry in the salt waters of the State, which license tax must be renewed annually, and amounts to one dollar on boats under 16 feet long and under 4 feet beam, and twenty cents for each additional foot or fraction thereof of length or beam. But it especially provides that: "The payment of a license tax or the procuring of any license shall not be required of persons fishing only with hook and line or with rod and reel or similar devices." See last paragraph of Chapter 6877, which appears as Section 1837 of the Compiled General Laws of Florida of 1927.

Chapter 17917 is: "An Act relating to the salt water fishing in the State of Florida in tidal waters and other territorial waters of the State of Florida and providing a license tax on all boats, vessels, schooners or launches operating and/or plying in the tidal and salt waters or other waters under the control of the State Board of Conservation of the State of Florida," etc.

Thus both statutes deal with salt water fishing.

Chapter 17917 was adopted in 1937 and it contains this express provision, in Section 7 of the statute: "This Act does not repeal any general, local or special Act or law, but shall be considered and construed as supplementary thereto."

Now, certainly Chapter 6877 is a general law, and in Section 14 thereof it expressly provides that persons fishing

only with hook and line or with rod and reel shall not be required to procure any license, or pay any license tax.

Chapter 17917 provides for practically the same amount of license tax, based on the same sizes of boats, as that provided for in the older Act, but it does not state what length of time such license would cover; that is, under the latter Act, it was left an open question as to whether the license ran for the life of the boat or should be renewed annually. This question was settled in a decision handed down by this Court in March of 1939 in the case of Scott v. Worthington, 136 Fla. 708, 187 So. 369, in which case, this Court, in plain language said:

"We think it must be renewed annually. Chapter 17917 merely imposes the license without specification as to its life but Section 7 of the Act *in terms requires that it be construed as supplementary to all general and special laws on the same subject* and both Section 3 of Chapter 18011, Acts of 1937, relating to occupation licenses, and Section 15 of Chapter 6877, Acts of 1915 (Section 1838, Compiled General Laws of 1927) relating to the same subject matter, limit such licenses to one year. *Chapter 17917 must be read in connection with these Acts* and when done, it follows that such licenses must be renewed annually." (Emphasis supplied.)

It is perfectly plain to my mind that the rule laid down in this decision is correct and that, when applied here, it would mean that boats used for hook and line or rod and reel fishing are still exempt from this tax by reason of the exemption provisions contained in 6877, which is not repealed by the latter Act, said latter Act being merely supplementary to the prior statute. This conclusion is supported by our holdings in State v. McMillan, 55 Fla. 246, 45 So. 882, and Amos v. Conkling, 99 Fla. 206, 126 So. 283.

I think that the attempt to collect this tax from hook and line fishermen is not authorized for another reason. Chapter 17917 is a revenue tax measure, containing no regulatory provisions of any nature, and is devoid of any connection with the preservation of the public health, safety, morals or general welfare. Therefore, it cannot be sustained as a license tax imposed under the police power of the State. As to those engaged in the fishing industry, which is a business enterprise, I think the tax enforceable and collectable. The exemption provision does not apply to them. As against common-place hook and line, rod and reel fishermen, who engage in fishing as an occasional sport or pastime, or to catch a few fish for the family table, the placing of a tax in proportion to the length and width of the boat used in such fishing in addition to the regular property ad valorem tax imposed by law on all personal property, is not only not a valid exercise of the police power, but it cannot be a valid exercise of the taxing power *per se,* because Section 1 of Article IX of the Constitution provides that the Legislature shall provide a uniform and equal rate of taxation based upon just valuation of all property, real and personal. Here the tax is not based upon any sort of valuation; it is based upon the size of the boat, regardless of value. It also amounts to double taxation.

In this connection we must not forget that the tax here sought to be imposed under Chapter 17917 is not upon the *privilege* of using the boat for the purpose of fishing, but it is upon the boat itself, according to its size. There being no regulation contained in the Act, no exercise of police power, it is really a tax upon a certain class of property, not according to the value, but according to the length and width of the boat.

This Court has long recognized the right of the people

of this State to fish in the navigable and tide waters of the State as a common-law right. Our people have always had the right to fish in such waters for their own enjoyment and personal use, not as a privilege, but as a right. Thus in *ex parte* Powell, 70 Fla. 363, 70 So. 392, this Court, speaking through Mr. Justice WHITFIELD, among other things, said:

"Under the common law of England, the Crown in its sovereign capacity held the title to the beds of navigable or tide waters, including the shore, or the space between high and low water marks, in trust for the people of the realm who had rights of navigation, commerce, fishing, bathing and other easements allowed by law in the waters. This rule of the common law was applicable in the English colonies of America. * .* * The rights of the people of the States in the navigable waters and the lands thereunder, including the shore or space between ordinary high and low water marks relate to navigation, commerce, fishing, bathing and other easements allowed by law. * * * Under the civil law of Spain all those owing allegiance to the Crown were equally entitled to the right to fish in the public waters of the Kingdom. * * * Under the American law, the United States held the public waters and the fish therein for the benefit of the people and such holding was by law transferred to the State upon its admission into the Union, subject to the powers granted to the United States as to interstate commerce navigation, etc., under the Federal Constitution, and the holding by the new State was the same as that of the original thirteen States."

So, ordinary hook and line fishing is a common law right and not a taxable privilege.

And we have always held that statutes in derogation of the common law must be strictly construed. But here the

500

Legislature reinforces this principle, by embracing in the older statute an express exemption of boats used in hook and line or rod and reel fishing, and the later Act expressly provides that it shall not repeal any general or special law, but shall be construed as supplementary thereto.

The petiton for rehearing should in my opinion be granted.